[Civ. No. 48358. Second Dist., Div. Three. June 30, 1976.]

G. W. ANTHONY et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY et al.,
Respondents;
GENERAL MOTORS CORPORATION, Real Party in Interest.

**COUNSEL**

Zetterberg & Zetterberg, Stephen I. Zetterberg, Charles L. Zetterberg and Dennis G. Martin for Petitioners.

John H. Larson, County Counsel, and John P. Farrell, Deputy County Counsel, for Respondent.

O'Melveny & Myers, Homer I. Mitchell, Girard E. Boudreau, Jr., and Frazer F. Hilder for Real Party in Interest.

## OPINION

**FORD, P. J.**—Petitioners are the named plaintiffs in a class action filed against General Motors Corporation on August 12, 1969. They seek a writ of mandate to compel respondent court to vacate its order denying their request for a dismissal of the action and to order that the action be dismissed.

The case was before the appellate court in *Anthony v. General Motors Corp.* (1973) 33 Cal.App.3d 699 [109 Cal.Rptr. 254], wherein it was determined that the trial court had erred in holding that the action could not be maintained as a class action. The history of the case to that point in time was set forth in the opinion as follows (p. 702):

"The action arises out of alleged defects in 15 × 5.50 three-piece disc wheels made by Kelsey-Hayes Corporation, Inc. (hereafter Kelsey-Hayes) and sold by General Motors as optional equipment on 1960-1965 Chevrolet and General Motors Corporation three-quarter ton trucks. Plaintiffs sue on behalf of themselves and others similarly situated. Plaintiffs do not allege that they were injured personally as a result of their defective wheels, or that they have incurred any consequential damage as a result of wheel failure.

"The original complaint was filed against General Motors and Kelsey-Hayes, and it was filed by plaintiffs as a class action. The complaint requested that defendants recall and pay for the replacement of the wheels. Defendants thereafter mailed a notice that they would replace the three-piece wheels on all three-quarter ton trucks with campers or special bodies with General Motors paying the cost. Plaintiffs then filed a supplemental complaint alleging that the above alleged settlement would mislead three-fourths of the truck owners into believing their wheels were safe when in fact the rest of the wheels were not safe. Demurrers were sustained with leave to amend and plaintiffs amended. The demurrer was sustained without leave to amend as to Kelsey-Hayes; the demurrer was overruled as to General Motors, and General Motors answered.

"Later, the federal highway administrator notified General Motors that there was a defect in the wheels resulting in an unreasonable risk of harm. General Motors then filed suit against the Department of Transportation in the United States District Court in Delaware to

invalidate the finding. The United States government sued in the United States District Court of the District of Columbia to assess a $400,000 fine against General Motors. The Delaware court refused jurisdiction and the suit in Washington for a fine is proceeding.

"After substantial discovery, plaintiffs moved for a motion for summary judgment, which was denied. General Motors filed a motion that the action not be maintained as a class action. The court held that the action could not be maintained as a class action. Plaintiffs refused to amend their complaint to state individual causes of action and plaintiffs appeal from the order of dismissal."

In the prior opinion the appellate court recognized that plaintiffs sought relief in addition to the replacement of wheels. The court stated (33 Cal.App.3d at p. 708): "It is contended that several of the 'causes of action' set forth in the complaint—actually a series of separate theories of liability—are not legally valid. We do not here consider those contentions. If the defendant is correct, the proper action is for the trial court, in its order, to indicate which theories it will not entertain and which theories it will entertain, so that the parties may limit their evidence appropriately."

It is to be noted that in the prayer of the first amended and supplemental complaint the relief sought included general damages for (a) depreciation in the value of the trucks "occasioned by defendant GENERAL MOTORS' disclosures of May 28, 1969, in the aggregate amount of $30,000,000.00," (b) the "cost of obtaining inspections and repairs and replacements advised by defendant GENERAL MOTORS in its letter of May 28, 1969, in the amount of $60,000,000.00," (c) the loss of use of the trucks "prior to, and during, said inspection and repairs, in the amount of $7,500,000.00," and also "damages occasioned by unfair business practices (CC 3369) against plaintiffs and each member of plaintiffs' class, and in favor of certain fleet customers of defendant GENERAL MOTORS in the sum of $60,000,000.00." Exemplary damages in amounts of $60 million and $100 million were also sought.

On February 6, 1976, the superior court took under submission petitioners' written request that the action be dismissed with prejudice as to the named plaintiffs Anthony and Lockerbie and without prejudice as to the members of the "purported class." In the declaration of Stephen I. Zetterberg, one of the attorneys for the plaintiffs, in support of the

request it was stated that the "primary concern of named plaintiffs, and of plaintiffs' attorneys herein, has been to obtain replacement of the Kelsey-Hayes wheels free of charge to the truck owners"; that as set forth in the consent order dated November 6, 1975, in the action brought by the federal government against General Motors Corporation in the District of Columbia, General Motors had undertaken a "product safety recall" whereby General Motors agreed to recall and replace free of charge all of the wheels remaining on the designated trucks; that issues relating to whether plaintiffs' action "may now be maintained as a class action and, if so, the scope of the appropriate class, have been tendered to this Court and are under submission"; that this "case involves sharply contested and complex issues as to whether the recall makes the case moot, the breadth of an appropriate class, whether the case may proceed as a national class action, and under what theories of liability the case may proceed"; that "[f]or practical purposes, the main thrust of plaintiffs' complaint herein, to wit, injunctive relief requiring recall of wheels on all the trucks, plus reimbursement for the cost of wheels to those truck owners who purchased their own replacement, has been accomplished"; that plaintiffs' counsel "have diligently prosecuted and maintained this action, and have diligently pressed, on behalf of the owners of the trucks, for recall and replacement of the wheels, a remedy not available to the truck owners under federal law"; that "[p]laintiffs and their attorneys believe that their efforts in prosecuting this action have contributed to the decision of General Motors Corporation to agree to undertake said recall"; that the time sheets, files, and records of plaintiffs' attorneys will show that they have expended in excess of 5,000 hours on this case in carrying out their fiduciary duty to the class, and "have advanced costs and expenses specially for the benefit of the class"; that General Motors denies that it has any liability for plaintiffs' claim for attorneys' fees, but, "in the interest of saving time and expense with regard to the litigation of that claim and, as well, to avoid the further expense and effort associated with the remainder of plaintiffs' complaint, the parties have agreed to compromise plaintiffs' claim for attorneys' fees against General Motors by the payment by General Motors to Zetterberg & Zetterberg of the sum of $300,000 as and for attorneys' fees and costs rendered and/or incurred in connection with the *Anthony* and *Bizer* cases";[1] that "[p]ayment of this fee will not directly or indirectly reduce or detract from the recovery realized by the class plaintiffs' attorneys purport to represent, and the payment will be made by the defendant, and not out of any fund or benefits received or to be received by the

---

[1]The *Bizer* case is an action of a similar nature pending in the State of Arizona.

class"; that neither any named plaintiff nor any member of the class alleged by plaintiffs will share in any of the fees paid to plaintiffs' attorneys; that the "recall and replacement of wheels above described, together with the prior recall program in 1969, constitute the benefits to the trucks [*sic*] owners to which this case has contributed"; that "[n]o benefits are being received as a result of the dismissal or otherwise by the named plaintiffs, which have not or are not made available to all members of the class the named plaintiffs have alleged to represent"; that "[i]n view of the foregoing, the basic interests of the putative class and the interest of safety with regard to the public at large have been satisfied and therefore dismissal of this case in the form proposed by the parties hereto is in the best interest of the purported class and in the interest of justice."

A copy of the body of the proposed settlement agreement is appended to this opinion.

At the hearing on February 6, 1976, of plaintiffs' request for an order permitting the dismissal of the action, the principal argument in support of the request was made by counsel for General Motors. Portions thereof will be noted inasmuch as they afford aid in understanding the views thereafter expressed by the trial court: ". . . I emphasize the Court is not being asked to approve or disapprove a settlement of any claim on behalf of the purported Class, nor is the Court being asked to approve or disapprove the settlement agreement which has been made between General Motors Corporation and plaintiffs' counsel with respect to the disposition of their claim made in their own behalf for attorneys' fees for services allegedly rendered in connection with this matter. No award of attorneys' fees is sought and none is contemplated by the parties. The agreement with respect to attorneys' fees was brought to the attention of the Court initially, in our view, solely on the basis of an informational problem because we thought we were required to do so by the provisions of 470(b) of the Local Class Action Manual, [2] but there was some question, your Honor, whether we were required to do that because we did not believe that the payment being made as attorneys' fees was consideration, as such, for the dismissal which the Class Action Manual refers to, but we brought it to your Honor's attention because we wanted

---

[2]The reference is to section 470 of the Class Action Manual of the Los Angeles Superior Court, which provides that the clerk of the court shall not process requests for dismissal of class actions without court approval. The propriety of that provision will be considered at a later point in this opinion.

what we were doing to be completely above board, nothing behind the scenes. . . . Now, your Honor, I think we all agree that the basic purpose of Section 470 of the Class Action Manual . . . is to ensure that a named plaintiff, or his counsel, do not use the muscle of the Class Action to obtain for themselves money or other benefits that rightly should be distributed to the Class. . . . [I]f your Honor finds that these elements are not present, namely, moneys are not being received by plaintiffs' counsel which rightly ought to go to the Class, and secondly, that the dismissal does not prejudice any rights of the members of the Class, I submit the Court must allow the dismissal to go forward for there is no reason not to allow it. Your Honor, I think one of the problems we have to face up to in this proceeding is to recognize that . . . no claim on behalf of the Class is being compromised or settled. . . . It [the class] has already received that to which it was entitled if this case had proceeded to final judgment. Their rights have been satisfied. The fundamental focus of this case from the outset has been a prayer for mandatory injunctive relief to require recall of all the wheels. That has happened. . . . Now, there hasn't been mandatory injunction in this case, but we all know that that kind of relief has occurred indirectly as a result of the Washington action . . . . Well, I submit to your Honor that aside from the recall of the wheels, the rest of this complaint is just window dressing, just the kind of window dressing that you put into a Complaint to make sure you have covered all your bases and if you don't get what you are really wanting, you have got another way to go."

Counsel for General Motors further argued: "The simple fact of the matter is, Your Honor, that the Washington recall has caused this case to be moot and its continuance can serve absolutely no further purpose other than to burden this court's calendar, other than to burden General Motors, and the plaintiffs with going through a number of procedural hassles finally to bring this thing to a conclusion. . . . The claims of the purported class, which hasn't been designated in this class [sic] yet, are being dismissed without prejudice. Now, I submit, Your Honor, if there is something really there, which I submit there is not, and somebody really thinks that he ought to pursue some other form of relief against General Motors, they have got the right to pursue that action. . . . We have come to a point where no claims of the class are being compromised or settled. . . . In addition to the claims that have been made and satisfied on behalf of the class, there is another claim, a claim not made on behalf of the class but a claim made solely on behalf of plaintiffs' counsel. It is their claim, not the class, and that is the claim that we are

settling by the payment of money. The purported class has absolutely no legitimate interest in that claim. . . . The class recovery is recall of the wheels. Plaintiffs' lawyers can't be paid off in wheels. . . . The federal court had control over that and because of something that happened on the East Coast, the relief that their plaintiffs would have obtained, had they been able to pursue this case, has already been given. So there is no fund out of which attorneys' fees could be awarded. We agree with Your Honor, we take the position that as a matter of law they are not entitled to an award of attorneys' fees against General Motors, but they disagree with that, and they cite precedent—the Attorney General, private Attorney General concept, the obdurate conduct concept, all of these legal theories which we dispute vehemently. They also claim as a factual matter they contributed to the recall that occurred and to the benefit of the class. We dispute that factually. . . . We don't want to litigate that issue. They don't want to litigate that issue. . . . We are paying $300,000 so we don't have to litigate that mess. . . . We want to settle this matter. We don't think their claim is valid but we are willing to pay money to get rid of it."

As to the matter of whether notice should be given to the class before dismissal of the action, General Motors' counsel argued: "No right of any purported class member is being compromised by the dismissal. As I have tried to say, the class rights have already been satisfied. The dismissal is without prejudice. They have no right in the attorneys' fees. No right on their behalf is being compromised, adjudicated, or settled in any way, not at all. The purpose of notice, it seems to me, is to advise a party that somebody is about to adjudicate or compromise or affect his rights in some way without his knowledge and consent. Well, what we are proposing be done here does not in any way affect the rights of the purported class because we are not settling their claims. Moreover, Your Honor, we do not have a class in this case yet. There is nobody to send the notice to."

In the course of the argument of Mr. Stephen Zetterberg, one of plaintiffs' attorneys, he stated that he believed that the issue was precisely that which counsel for General Motors had stated.

The matter was submitted on February 6, 1976. On February 19, 1976, the court filed an informal memorandum in which it stated that "whether this present request be considered one to dismiss the action or to settle it, the court must approve the request before it is entered." The

court further stated: "The present request is for more than a dismissal, for it is made clearly in consideration of $300,000 to be paid by defendant to the attorneys for plaintiff class. In fact, submitted as Exhibit A to the Stephen I. Zetterberg declaration of January 14, 1976 is a copy of a 'SETTLEMENT AGREEMENT' between the parties.[3] However, as a settlement the matter is deficient in several particulars. First: There is no showing that $300,000 adequately compensates the class for its surrender of its several claims for money damages. Assuming that the main thrust of the action has been to procure new wheels which has now been satisfied through the decree in *United States of America* v. *General Motors Corp.*, Civil No. 3298-70, United States District Court for the District of Columbia, the claim for money which plaintiffs consistently have asserted is substantial and even if the entire $300,000 were to go to the class, there is no showing that it would be adequate consideration for dismissal of these money claims. [¶] Secondly, assuming that $300,000 would be a fair settlement of the class' money claims against the defendant, there is no showing that it is fair to appropriate the entire amount to the class' attorneys and as a corollary, there is no sufficient showing that the activities of plaintiffs' attorneys have been reasonably worth $300,000. That the Washington, D.C. action has paralleled this suit and has afforded to the class a portion of the remedy which has been sought in this suit does not mean that the class's attorneys, by their activities, have conferred upon the class sufficient benefits to justify a fee of the requested amount."

With respect to the matter of notice, the respondent court stated: "Thirdly, there is no sufficient reason why notice to the class should not be given in order that its members might have the opportunity to express their opinion concerning this proposed settlement. Even though the dismissal is without prejudice to all except Anthony and Lockerbie, certainly no one is likely to now file a similar action. Thus, these class members must be informed of this proposed settlement which will result in their obtaining no benefit at all and advised of their right to challenge the propriety of the proposed dismissal."

On February 20, 1976, respondent court denied the request that the action be dismissed.

The matter of the validity of section 470 of the Los Angeles Superior Court's Manual for the Conduct of Pretrial Proceedings in Class Actions

---

[3]The body of the agreement is appended to this opinion.

was before another division of this court in the recent case of *Marcarelli v. Cabell,* 58 Cal.App.3d 51 [129 Cal.Rptr. 509]. ■ We agree with the reasoning which was expressed therein at page 53 as follows: "We hold that a class action, once filed, may not be dismissed without court approval and that rule 470 necessarily follows from the Supreme Court's holding in *La Sala v. American Sav. & Loan Assn.,* 5 Cal.3d 864, 871 [97 Cal.Rptr. 849, 489 P.2d 1113], that '[w]hen a plaintiff sues on behalf of a class, he assumes a fiduciary obligation to the members of the class, surrendering any right to compromise the group action in return for an individual gain." Consequently, the clerk of the superior court was not free to process a request for the dismissal of a class action without court approval.[4]

■ In view of the basis upon which both General Motors and plaintiffs presented the matter to the trial court, it is appropriate to examine the soundness of their assumption that plaintiffs' attorneys had a legitimate basis for a claim for attorneys' fees against General Motors separate and distinct from any claim of the named plaintiffs and the class which the named plaintiffs had undertaken to represent.

In *Menge v. Farmers Ins. Group,* 50 Cal.App.3d 143 [123 Cal.Rptr. 265], the plaintiffs filed a class action against defendant insurance company, seeking an injunction against the distribution of certain solicitation material which was alleged to be inaccurate and misleading. The parties ultimately stipulated to the entry of a judgment which, in effect, granted the plaintiffs the relief which they sought. The judgment also ordered the defendant to pay the sum of $7,500 to plaintiffs' attorneys for their services in connection with the proceeding, a provision which the defendant challenged on appeal. In reversing the portion of the judgment as to attorneys' fees the appellate court stated (50 Cal.App.3d at pp. 147-148): "We turn, then, to the major issue in this appeal: may a defendant, in the kind of class action herein involved, be ordered to pay the fees of the plaintiffs' counsel? [¶] Ordinarily, attorney fees may be awarded only where they are provided for by statute [fn. omitted], by a contract between the parties [fn. omitted], or where the plaintiff recovers or preserves a common fund. (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 116, p. 3267 [fn. omitted].) Fees also may be awarded in the case of a stockholder's derivative action, even though the judgment preserves valuable rights but does not award money damages.

---

[1]In the petition herein both the Superior Court of the County of Los Angeles and the clerk of the superior court are respondents.

(*Fletcher* v. *A. J. Industries, Inc.* (1968) 266 Cal.App.2d 313 [72 Cal.Rptr. 146].) [¶] Although, at the time the trial court acted, there was federal authority for an award of attorney fees where the plaintiff, acting as a 'private attorney general,' sues to enforce a public right [citation], the United States Supreme Court has since rejected that concept. (*Alyeska Pipeline Service Co.* v. *The Wilderness Society* (1975) 421 U.S. 240 [44 L.Ed.2d 141, 95 S.Ct. 1612].) In *D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 27 [112 Cal.Rptr. 786, 520 P.2d 10], and in *Bozung* v. *Local Agency Formation Commission* (1975) 13 Cal.3d 483 [119 Cal.Rptr. 215, 531 P.2d 783], the Supreme Court expressly refused to pass on the question of whether the 'private attorney general' rule existed in California [fn. omitted]."

In *D'Amico* v. *Board of Medical Examiners,* 11 Cal.3d 1 [112 Cal.Rptr. 786, 520 P.2d 10], our Supreme Court stated (p. 25): "Section 1021 of the Code of Civil Procedure provides in relevant part: 'Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . .' No state statute provides for the award of attorney's fees in a case of this nature, and there has been no express or implied agreement concerning attorney's fees in this case. However, appellate decisions in this state have created two nonstatutory exceptions to the general rule of section 1021, each of which is based upon inherent equitable powers of the court. The first of these is the well-established 'common fund' principle: when a number of persons are entitled in common to a specific fund, and an action brought by a plaintiff or plaintiffs for the benefit of all results in the creation or preservation of that fund, such plaintiff or plaintiffs may be awarded attorney's fees out of the fund. [Citations.] The second principle, of more recent development, is the so-called 'substantial benefit' rule: when a class action or corporate derivative action results in the conferral of substantial benefits, whether of a pecuniary or nonpecuniary nature, upon the defendant in such an action, that defendant may, in the exercise of the court's equitable discretion, be required to yield some of those benefits in the form of an award of attorney's fees. [Citations.]"

As was true in *D'Amico,* in the present case there is no "common fund" involved. Moreover, the "substantial benefit" rule can have no application herein for the simple reason that any "benefit" resulting from the efforts of plaintiffs and their counsel was bestowed on *plaintiffs* and those similarly situated, not on General Motors.

In *D'Amico* our Supreme Court made reference to federal cases which have found another basis for attorney's fees not heretofore recognized in this state. The court stated (11 Cal.3d at p. 26): "Plaintiffs take refuge in a series of federal cases which, generally speaking, fall into two groups. The first group involves awards of attorney's fees to the prevailing litigant when his opponent has maintained an unfounded action or defense and has done so 'in bad faith, vexatiously, wantonly or for oppressive reasons.' [Citation.]"[5] But it is manifest that in the present case General Motors has not maintained an unfounded defense "in bad faith, vexatiously, wantonly or for oppressive reasons." Consequently, even if a California trial court would have discretion to award or approve attorney's fees in a case falling within the concept just discussed, no appropriate factual situation is here presented.

There has been no determination of the composition of the class and the action has neither been pursued to judgment nor settled insofar as the class is concerned. A portion of the settlement agreement is as follows: "No Court determination shall be made of the issues in this case, or of the conflicting claims of plaintiffs and General Motors or plaintiffs' attorneys and General Motors, other than those which result as a matter of law from the dismissals with prejudice of the claims of the named plaintiffs in *Anthony* and *Bizer.*" In short, neither the named plaintiffs nor any member of the class which they undertook to represent has received anything as a *direct* result of the class action, but it is proposed that plaintiffs' attorneys receive $300,000 in settlement of the attorneys' "claim" against General Motors. (Cf. *Ellis* v. *Flying Tiger Corporation* (7th Cir. 1972) 504 F.2d 1004, 1007-1008.) As has been explained, however, the asserted justification for approval of the dismissal of the action, namely, that the payment of $300,000 is in settlement of that "claim," is without substance.

That the use of the device of a class action is subject to abuse in a number of ways is a well-known fact. In determining a matter of the nature of that presented to the trial court in the present case it is the responsibility of the court to guard the integrity of the class action device as well as its own integrity.[6] Guidance is found in the following

---

[5]The cases which constitute the second group of federal cases discussed in *D'Amico* (11 Cal.3d at p. 27) involve the so-called "private attorney general" concept, a concept hereinabove discussed in the present opinion.

[6]As stated in section 1.46 of the Manual for Complex Litigation, "settlement of class actions is a most sensitive area."

statement of the court in *Jamison* v. *Butcher & Sherrerd* (E.D.Pa. 1975) 68 F.R.D. 479, at page 484: "In addition, we join the *Norman* court in admonishing counsel that it is inappropriate for a proposed settlement to provide for direct payment of attorneys' fees to counsel for the class representatives. *Norman* v. *McKee,* 290 F.Supp. at 36. *See also City of Philadelphia* v. *Charles Pfizer & Co.,* 345 F.Supp. 454, 470-471 (S.D.N.Y. 1972). Rather, the issue of attorneys' fees is more properly reserved for judicial consideration after settlement of the gross amount to be paid to the class. The present arrangement leaves the unfortunate impression that defendants are buying themselves out of a lawsuit by direct compensation of plaintiffs' counsel."

Since, for the reasons stated hereinabove, there was no abuse of discretion on the part of respondent court the petition for a writ of mandate must be denied. (*Dowell* v. *Superior Court,* 47 Cal.2d 483, 486 [304 P.2d 1009].) Consequently, we do not reach the question of what would be required by way of notice to the class if the plaintiffs' proposed disposition of the action had otherwise been determined to be proper. (See *Cartt* v. *Superior Court,* 50 Cal.App.3d 960 [124 Cal.Rptr. 376].)

The alternative writ of mandate is discharged. The petition for a peremptory writ of mandate is denied.

Allport, J., concurred.

**COBEY, J.**—I concur. In view of the fiduciary obligation of named plaintiffs to unnamed plaintiffs in a class action (see *La Sala* v. *American Sav. & Loan Assn.,* 5 Cal.3d 864, 871 [97 Cal.Rptr. 849, 489 P.2d 1113]; *Marcarelli* v. *Cabell,* 58 Cal.App.3d 51, 54 [129 Cal.Rptr. 509]; L.A. Super. Ct., Manual for Conduct of Pretrial Proceedings in Class Actions, § 470; 15 Marshall, Cal. Practice, App., p. 475), it is clear to me that judicial approval of the proposed dismissal was properly required. I further agree with my colleagues that the trial court did not abuse its discretion in refusing to approve, under current circumstances, the dismissal of the underlying action.

I am unable to agree, however, with my colleagues' suggestion, citing *Jamison* v. *Butcher & Sherrerd* (E.D.Pa. 1975) 68 F.R.D. 479, 484, and *Norman* v. *McKee* (N.D.Cal. 1968) 290 F.Supp. 29, 36, that it is *never* appropriate for a class action settlement to provide that the defendant shall pay plaintiffs' attorney fees.

It is true that the "private attorney general" theory, as a basis for an award of attorney fees against a class action defendant, currently has an uncertain vitality in California.[1] The appropriateness of its application to this case, however, seems clear to me in view of the increase in highway safety obtained, at least in part, by the plaintiffs for all who use the highways.

Furthermore, a negotiated dismissal under which the only monetary payment is to plaintiffs' attorneys is not inappropriate under the circumstances of this case.[2] Its principal objective, the recall of all trucks with defective wheels, has been achieved. Plaintiffs' unlitigated damage claims seem to be of negligible value at best and the proposed dismissal is stated to be "without prejudice" as to the unnamed plaintiffs.[3]

Yet it is the fact that these unnamed plaintiffs have received neither notice of the proposed dismissal (including its terms) nor completely disinterested representation in the negotiation of the underlying settlement that causes me to concur with my colleagues. An inherent conflict of interest exists with respect to the proposed dismissal between plaintiffs' attorneys on the one hand and their unnamed clients on the other.[4]

In my view, this conflict could be eliminated either (a) by court appointment of independent counsel who would give his opinion of the consequences of the dismissal for the unnamed plaintiffs or (b) by sending notice of the proposed dismissal (including its terms) to these plaintiffs and soliciting their objections, if any, to it. If the trial court

[1]The theory was rejected by the United States Supreme Court in *Alyeska Pipeline Co.* v. *Wilderness Society* (1975) 421 U.S. 240, 263 [44 L.Ed.2d 141, 156, 95 S.Ct. 1612]. Our Supreme Court has twice refused to pass upon the question. (See *D'Amico* v. *Board of Medical Examiners*, 11 Cal.3d 1, 27 [112 Cal.Rptr. 786, 520 P.2d 10], and *Bozung* v. *Local Agency Formation Com.*, 13 Cal.3d 483, 485 [119 Cal.Rptr. 215, 531 P.2d 783].) Petitioners' counsel informs us that our Supreme Court has granted a hearing in a case in which attorney fees were awarded on the basis of the private attorney general theory. See *Serrano* v. *Priest*, L.A. No. 30398; hg. granted Jan. 3, 1975.)

[2]There is substantial evidence in the record before this court that petitioners' attorney fees of $300,000 are reasonable in light of the work done and result accomplished.

[3]I am not now satisfied that such would be its effect. For example, if the action were to be dismissed, some plaintiffs might be unable to file new actions because of the running of the statute of limitations. (Cf. *American Pipe & Construction Co.* v. *Utah* (1974) 414 U.S. 538, 541-542 [38 L.Ed.2d 713, 720, 94 S.Ct. 756].)

[4]In this connection, I want to stress that there is absolutely nothing in the record indicating any failure whatsoever of plaintiffs' attorneys to live up to their professional obligation to all their clients in negotiating the settlement underlying the dismissal.

were assured by either method that the unnamed plaintiffs could suffer no harm by the dismissal, then I would conclude that it would be within sound judicial discretion to approve a dismissal of this case on the terms proposed by the parties.

A petition for a rehearing was denied July 27, 1976, and petitioners' application for a hearing by the Supreme Court was denied September 29, 1976. Mosk, J., was of the opinion that the application should be granted.

---

## APPENDIX

### SETTLEMENT AGREEMENT

RECITALS.

1. The case of, *G. W. Anthony and Herbert T. Lockerbie, Plaintiffs, v. General Motors Corporation, Defendant*, Superior Court of the State of California, County of Los Angeles, No. 959,058 (Class Action), was commenced by the named plaintiffs through their attorneys Zetterberg & Zetterberg (formerly Zetterberg & George) on August 12, 1969. In said action, the named plaintiffs purport to represent all owners of 1960 through 1965 ¾-ton Chevrolet or GMC trucks equipped with $15 \times 5.50$ Kelsey-Hayes three-piece disc wheels (hereinafter referred to as "TRUCKS").

2. On or about October 7, 1969, with the approval of the United States of America, Department of Transportation, General Motors Corporation mailed letters to all then known registered owners of such TRUCKS, offering to replace at General Motors' expense the wheels on such TRUCKS which were equipped with a camper or other special body, and offering to reimburse the owners of such TRUCKS equipped with a camper or other special body in the event such owners had replaced their wheels subsequent to May 1969.

3. On October 17, 1969, the named plaintiffs, through their attorneys, filed a supplemental complaint, and on May 27, 1970, the named plaintiffs, through their attorneys, filed a first amended and supplemental complaint.

4. On September 2, 1969, Algird S. and Rida Bizer, Arizona residents and members of the class purported to be represented by named plaintiffs Anthony and Lockerbie, through their attorneys Dushoff & Sacks (formerly Dushoff, Sacks & Corcoran), of Phoenix, Arizona, filed the case of *Bizer v. General Motors Corporation*, No. C 226436 in the Superior Court of the State of Arizona, in and for the County of Maricopa. The named plaintiffs in the *Bizer* case purport to represent the same class as named plaintiffs Anthony and Lockerbie. The *Bizer* case was stayed by the Arizona Superior Court on December 12, 1969, pending the outcome of *Anthony v. General Motors Corporation*.

5. Following exhaustive briefing and lengthy hearings regarding the propriety of *Anthony v. General Motors Corporation* as a class action, and the refusal of the named plaintiffs to amend their complaint so as to set forth claims solely on their own behalf, the Superior Court for the State of California, on December 22, 1971, ordered said case dismissed.

6. The named plaintiffs, through their attorneys, appealed from the Order of Dismissal, and on July 26, 1973, the District Court of Appeal reversed and remanded the

case to this Court for further proceedings (*G. W. Anthony, et al. v. General Motors Corporation*, 33 Cal.App.3d 699).

7. On November 6, 1970, the case of *United States of America v. General Motors Corporation*, Civil No. 3298-70, was filed in the United States District Court for the District of Columbia. Said case involved the same truck wheels which are the subject matter of the *Anthony* and *Bizer* cases.

8. By virtue of a Consent Order dated November 6, 1975, entered in *United States of America v. General Motors Corporation*, General Motors was ordered to send and has sent notice by first-class mail to the persons who, according to the R. L. Polk & Co. survey commissioned by General Motors in the summer of 1974, are registered as owners of the TRUCKS involved in said District of Columbia case, offering to replace the wheels on said TRUCKS free of charge, and further offering to reimburse TRUCK owners who paid to replace said wheels on their own behalf subsequent to May 28, 1969.

9. Although the complaints in the *Anthony* and *Bizer* cases seek money damages of various sorts, the primary relief which has been sought in said cases from the outset has been an injunction requiring General Motors Corporation to replace the wheels on said TRUCKS free of charge. Now that this relief has been afforded to the named plaintiffs and the class they purport to represent in the *Anthony* and *Bizer* cases as a result of the Consent Order entered in *United States of America v. General Motors Corporation*, the remaining claims raised by the respective complaints in the *Anthony* and *Bizer* cases are of little, if any, significance and serious questions are posed to the Court as to whether said remaining claims, even if pursued, may appropriately be maintained on behalf of a class or at all.

10. The named plaintiffs and their attorneys (a) claim that the institution of the *Anthony* and *Bizer* cases and, as well, the diligent prosecution of the *Anthony* case on behalf of the named plaintiffs, contributed to the willingness of General Motors Corporation to enter into the Consent Order in *United States of America v. General Motors Corporation*, which said Consent Order has resulted in the named plaintiffs in the *Anthony* and *Bizer* cases and, as well, the members of the class they purport to represent, either receiving or being entitled to receive replacement of the wheels on their TRUCKS free of charge, and (b) claim that under its equitable powers the Court could, under various theories, require General Motors to pay attorneys' fees to plaintiffs' attorneys for their claimed contribution to obtaining the relief afforded the purported class as a result of the Consent Order. General Motors denies these claims and denies each and all of the material allegations contained in the respective complaints; denies that plaintiffs are entitled to maintain this action as a class action and denies any and all liability with regard to the respective complaints to the named plaintiffs, to the class they purport to represent as alleged in the complaint or otherwise and, as well, to plaintiffs' attorneys.

11. Because the basic thrust of plaintiffs' complaints in the *Anthony* and *Bizer* cases has now been rendered moot as a result of the Consent Order entered in *United States of America v. General Motors Corporation*, and because the parties are desirous of avoiding further litigation expense, time and effort and, as well, are desirous of not further burdening the Court with matters of little significance;

NOW, THEREFORE, IT IS AGREED between the parties hereto, by and through their respective counsel of record, subject to the approval of the Court, as follows:

1. The *Anthony* and *Bizer* actions, and each of them, shall be dismissed without prejudice, on behalf of the class the named plaintiffs purport to represent.

2. The *Anthony* and *Bizer* actions, and each of them, shall be dismissed with prejudice, on behalf of the named plaintiffs, and said named plaintiffs shall execute releases in favor of General Motors Corporation in the form annexed hereto as Exhibit A.

3. Concurrent with the dismissal of the *Anthony* and *Bizer* actions, as provided in paragraphs 1 and 2 hereof, and upon receipt of properly executed releases as set forth in

paragraph 2 hereof, General Motors Corporation shall deliver its check in the amount of $300,000, as and for attorneys' fees and costs rendered and/or incurred in connection with the *Anthony* and *Bizer* cases, made payable to the law firm of Zetterberg & Zetterberg. It is expressly understood that the law firm of Zetterberg & Zetterberg agrees to hold harmless and indemnify General Motors Corporation against any and all claims regarding attorneys' fees and costs, of attorneys of record in the *Bizer* case and the *Anthony* case, and of attorneys who may have assisted them. The responsibility for any distribution or allocation of said $300,000 in attorneys' fees and costs to such other attorneys or law firms, if any, shall be the sole responsibility of Zetterberg & Zetterberg.

4. No Court determination shall be made of the issues in this case, or of the conflicting claims of plaintiffs and General Motors or plaintiffs' attorneys and General Motors, other than those which result as a matter of law from the dismissals with prejudice of the claims of the named plaintiffs in *Anthony* and *Bizer*.