[L.A. No. 30530. Nov. 30, 1976.]

BLUE CHIP STAMPS et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES
COUNTY, Respondent;
ELEANOR BOTNEY et al., Real Parties in Interest.

## Counsel

Evelle J. Younger, Attorney General, Philip C. Griffin, Deputy Attorney General, McCutchen, Black, Verleger & Shea and G. Richard Doty for Petitioners.

Ronald A. Zumbrun and John H. Findley as Amici Curiae on behalf of Petitioners.

No appearance for Respondent.

Judith P. Taylor, in pro. per., David Daar, Daar & Newman, Allen E. Botney and Botney, Robbins & Kay for Real Parties in Interest.

## Opinion

**CLARK, J.**—Petitioners seek to compel respondent court to vacate its order certifying the class in Eleanor Botney v. Blue Chip Stamps and to dismiss the class action portion of the case. The class action must be dismissed.

Blue Chip sells trading stamps to merchants who in turn distribute them to customers. Between 1 March 1967 and 28 April 1970 the price for 1,200 stamps (a full book) ranged from $1.68 to $2.76 to the merchant. Blue Chip used several different price schedules, averaging $1.90 for each of the four years.

The merchants distributed the stamps to their customers at a rate of one stamp for each 10 cents of purchase, although some gave bonuses. When Blue Chip redeemed the stamps for merchandise, it charged sales

tax reimbursement on the basis of $3 per book, the estimated retail value of the merchandise.[1]

Blue Chip paid all tax reimbursements to the State Board of Equalization.

It is undisputed that a high percentage of California households—perhaps 95 percent—received Blue Chip stamps during the period. Between 50 and 60 million books were redeemed in 1969 and 1970. However, in recent years, redemptions have decreased to a fraction of those during the period in question.

On 1 March 1971, Eleanor Botney and Thelma Daar, represented by their attorney husbands, commenced an action on their own behalf and purportedly on behalf of persons similarly situated, seeking to recover the sales tax paid to Blue Chip. They also sought injunctive relief, punitive damages and attorney's fees. Blue Chip cross-complained against the State Board of Equalization, seeking refund of sales taxes in an amount equal to any judgment rendered against it. Judith Taylor, a member of the purported class, intervened, objecting to the class action as being contrary to her interest, the public interest, and the interest of other class members similarly situated to her.

Partial summary judgment determined it was proper for Blue Chip to collect sales tax reimbursement but the amounts exceeded that permitted by State Board of Equalization regulation 1671. The court did not specify the excess but called for an accounting.

Respondent court subsequently granted plaintiffs' motion to dispense with notice before trial. The court stated that records listing the members of the class are unavailable, that pretrial notice would have little practical effect, that notice "would require potential class members to search their memories and guess whether they had redeemed books of stamps during the pre-April 28, 1970 period covered by this case," and that as "most of the class members have overpaid only very small sums, and some as little as 18 cents, the likelihood of such members taking the trouble to 'opt out' of the class is rather remote." The court concluded that "depriving class members of the chance to 'opt out' by not having a pretrial publication of notice, would mean, as a practical matter, that the

---

[1]On 27 April 1970, Blue Chip stopped collecting sales tax reimbursement, changing to a "tax included" basis for its redemption transactions.

class would not be deprived of very much" and that this "small deprivation is better, on balance, than an ineffective and meaningless notice being published or posted." The parties, although disputing the court's conclusions, do not dispute the court's statements as to the absence of records or the minimal amounts due each member of the purported class.[2]

Following an amendment to correct a defect in the complaint, respondent court certified the class.[3]

■ Resting on considerations of necessity and convenience, the class action attempts to further justice. (*City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 458 [115 Cal.Rptr. 797, 525 P.2d 701]; *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 703-704 [63 Cal.Rptr. 724, 433 P.2d 732].) However, because group action is also capable of injustice, the representative plaintiff must show substantial benefit will result both to the litigants and to the court. (*City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447, 458-460; *Collins* v. *Rocha* (1972) 7 Cal.3d 232, 238 [102 Cal.Rptr. 1, 497 P.2d 225]; *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 811 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].) As pointed out in *City of San Jose,* "despite this court's general support of class actions, it has not been unmindful of the accompanying dangers of injustice or of the limited scope within which these suits serve beneficial purposes. Instead, it has consistently admonished trial courts to carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts. [Citations.] It has also urged that the same procedures facilitating proper class actions be used to prevent class suits where they prove nonbeneficial." (12 Cal.3d at p. 459; fn. omitted.)

The class action has been held appropriate when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer. (*Collins* v. *Rocha, supra,* 7 Cal.3d 232, 237 et seq.; *Vasquez* v. *Superior*

---

[2]The trial court calculated the overcharge to be approximately 6 cents per book, indicating that the sales tax per book should have been 9 cents rather than 15. Assuming that one stamp was issued for each 10 cents of purchase, a member of plaintiff class to recover $10 would have had to redeem stamps representing $20,000 in purchases.

[3]Subsequent to the trial court's rulings, it was held that a trial court must adjudicate procedural class action issues, including determination and notification of the classes involved, before it may determine a motion for partial summary judgment. (*Home Sav. & Loan Assn.* v. *Superior Court* (1976) 54 Cal.App.3d 208 [126 Cal.Rptr. 511].)

*Court, supra,* 4 Cal.3d 800, 807; *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695, 715.) ■ A factor in determining feasibility of the group approach is the probability each member will come forward ultimately, identify himself and prove his separate claim to a portion of the total recovery. (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695, 706, 713.)

However, when potential recovery to the individual is small and when substantial time and expense would be consumed in distribution, the purported class member is unlikely to receive any appreciable benefit. The damage action being unmanageable and without substantial benefit to class members, it must then be dismissed. (*In re Hotel Telephone Charges* (9th Cir. 1974) 500 F.2d 86, 91-92 (potential recovery of $6 per class member); *Devidian* v. *Automotive Service Dealers Assn.* (1973) 35 Cal.App.3d 978, 986 [111 Cal.Rptr. 228] (most claims $10 or less); *Stilson* v. *Reader's Digest Assn., Inc.* (1972) 28 Cal.App.3d 270, 273-274 [104 Cal.Rptr. 581] (millions of class members entitled to nominal damages).) And, when the individual's interests are no longer served by group action, the principal—if not the sole—beneficiary then becomes the class action attorney. To allow this is "to sacrifice the goal for the going," burdening if not abusing our crowded courts with actions lacking proper purpose. (See *City of San Jose* v. *Superior Court, supra,* 12 Cal.3d 447, 462.)

■ While termination of a defendant's alleged wrongdoing is a factor to be considered (*Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695, 715), it does not warrant group action for damage when the members will not' recover damage, and when a simpler remedy such as mandate is available. ■ Moreover, when as here, the assertedly wrongful practice has ended long before the action is filed, its requested termination is a rather empty prayer.

Here, in proposing methods of recovery to the class, the lawyers suggest payment of claims either by cash upon informal presentation or by "fluid recovery," repayment of excess tax collections by reducing future charges. However, the proof of claim requirement established by *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d 695, 706, 713, must be followed before a claimant may recover damages, particularly when departure will result in recovery by others than those who paid. Similarly, "fluid recovery" in the instant case provides no correlation between those who paid excess tax and those who might reap the benefit of a future reduction in redemption price. Those who left California after redeeming their stamps and those who have died will hardly benefit; further, the

great reduction in the stamp business indicates that those still redeeming stamps represent no more than a fraction of those who paid the excess tax. In contrast, any excess reimbursement benefited a larger class, the citizenry of California which includes the purported class. Balancing fairness, should not any overcharge remain in the public treasury?

This is an improper class action and the trial court abused its discretion in certifying it as one.[4]

Writ of mandamus shall issue directing respondent court to vacate its order certifying the class and to enter an order dismissing the class action. Petitioners shall recover their costs.

Wright, C. J., McComb, J., and Richardson, J., concurred.

**TOBRINER, J.**—I concur in the majority's conclusion that the trial court should be directed to enter an order dismissing this class action. I cannot, however, join in certain of the language in the majority opinion.

The majority opinion, in my view, places far too much emphasis upon the net monetary recovery to each class member, and far too little emphasis upon the role of the class action in deterring and redressing wrongdoing. A company which wrongfully exacts a dollar from each of millions of customers will reap a handsome profit; the class action is often the only effective way to halt and redress such exploitation. (See *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 808 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]; *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695, 715 [63 Cal.Rptr. 724, 433 P.2d 732].) The problems which arise in the management of a class action involving numerous small claims do not justify a judicial policy that would permit the defendant to retain the benefits of its wrongful conduct and to continue that conduct with impunity. (See *Daar* v. *Yellow Cab Co., supra,* 67 Cal.2d at p. 715; *Cartt* v. *Superior Court* (1975) 50 Cal.App.3d 960, 971 [124 Cal.Rptr. 376].)

---

[4]Petitioners have no adequate remedy by appeal from final judgment. Delaying review until final judgment—while the trial court attempts to manage the unmanageable—would mean that the parties could not obtain appellate review until after they had paid the great costs which render the damage action inappropriate. Thus, appeal from a final judgment is not a practical remedy. (See 5 Witkin, Cal. Procedure (2d ed. 1971) pp. 3823-3826; cf. *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800, 806-807 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513].) Moreover, absence of another adequate remedy was determined by this court when we granted an alternative writ. (E.g., *City of Los Angeles* v. *Superior Court* (1959) 51 Cal.2d 423, 429 [333 P.2d 745].)

In the present case, however, defendant Blue Chip Stamps did not profit from the alleged overcollection of sales tax, and terminated that allegedly wrongful practice before the present action was instituted. Moreover, given the unusual facts of this case, neither proof of claim procedures nor fluid recovery mechanisms could function as effective means of affording class members meaningful compensation for the alleged overpayments of the sales tax. Under these special circumstances, class suit was improper.

I particularly wish to emphasize, because the majority does not sufficiently do so, that the inappropriateness of fluid recovery mechanisms here is a result of the peculiar facts of this case, and not of any inherent deficiency in such mechanisms themselves.

Fluid recovery schemes may take either of two forms. The residue of a damages fund remaining after class members have filed their individual claims may be distributed to class members through a market mechanism.[1] Alternatively, a second form of fluid recovery would grant the residue of the damages fund to the state government for some public use benefitting class members along with other state residents.[2]

Plaintiffs here suggest the first form of fluid recovery. Any residue of the damages fund, they contend, should be used to reduce the amount of the tax collected in the future from individuals redeeming the trading stamps. As the majority correctly notes, however, because of the decline in popularity of the trading stamps, there is not enough of an overlap in this case between the class of individuals injured by defendant's conduct and the class of individuals who would benefit from distribution of the fund through the market to render this form of fluid recovery a rational means of compensating class members.

---

[1] This is the approach followed in the settlement which ultimately concluded the *Daar* litigation. There, the parties agreed to, and the superior court approved of, a settlement for $1.4 million, of which $950,000 was to be returned to the class by a reduction of taxicab fares below the then existing maximum authorized fares. Under the terms of the settlement, the Board of Public Utilities and Transportation of the City of Los Angeles was charged with the duty of overseeing compliance with the judgment. (See Comment, *Manageability of Notice and Damage Calculation in Consumer Class Actions* (1971) 70 Mich.L.Rev. 338, 366, fn. 186.) This form of fluid recovery has also been used in a litigated action to return a rate overcharge to customers of a transit company. (See *Bebchick* v. *Public Utilities Commission* (D.C.Cir. 1963) 318 F.2d 187, 203-204 [115 App.D.C. 216], cert. den., 373 U.S. 913 [10 L.Ed.2d 414, 83 S.Ct. 1304] (not a class action).)

[2] See 67 Cal.2d at page 715, footnote 15; see generally Comment, *Damage Distribution in Class Actions: The Cy Pres Remedy* (1972) 39 U.Chi.L.Rev. 448, 453-458.

The second form of fluid recovery is also inappropriate here. The claims of class members appear to be without exception so small that the likelihood of any class members coming forward to claim damages is quite low. As a result, the goal accomplished by granting the residue of a damages fund to the state is achieved by denying the class action, since the state is already in possession of the overcharge fund.

This case is an unusual one inasmuch as the class action at issue would neither serve to deter wrongdoing nor result in any added compensation for class members. Ordinarily, class litigation promises at least some benefit in the form of either increased compensation or deterrence. As we held in *Vasquez* v. *Superior Court, supra,* 4 Cal.3d at p. 810, the trial court must consider both the benefits which a class action would yield and any unfairness to either absent class members or to the defendant which might result from litigation of the underlying claims through aggregate procedures rather than through separate trials. This inquiry requires a court to judge the consequences not only of a common trial of questions of liability (see, e.g., *City of San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 461-462 [115 Cal.Rptr. 797, 525 P.2d 701]; *Vasquez* v. *Superior Court, supra,* 4 Cal.3d at pp. 811-815), but also of the use of techniques like fluid recovery which might be necessary if the benefits of class litigation are to be realized. Of necessity, subject only to broad constitutional restraints, the outcome of this inquiry will not turn on the application of any general rule: the significance of both the benefits and costs of class litigation can only be measured by looking to the values reflected in the cause of action under which suit is brought.[3] In this area of the law, we must inevitably proceed on a case-by-case basis.

Sullivan, J., concurred.

**MOSK, J.**—I dissent.

Because of their manifest antipathy to this class action, the majority sanction a grave misuse of an extraordinary writ. The dangerous

[3]In *Daar* v. *Yellow Cab Co., supra,* we acknowledged the influence of substantive law in determining the availability of fluid recovery mechanisms. Holding to be premature the state's suggestion that the residue of any damages fund revert to the state under the Uniform Disposition of Unclaimed Property Act (Code Civ. Proc., §§ 1500-1527), we noted that "[i]t lies within the sound discretion of the trial court, *within the dictates of the applicable law,* to determine the manner in which any further proceedings will be conducted." (67 Cal.2d at p. 715, fn. 15.) (Italics added.)

It is a mistake, under the approach this court has adopted for analyzing the propriety of class actions, to speak of a duty of the trial court to inquire whether a class action is

precedential potential of the prevailing opinion far outweighs the merits of this litigation.

The majority reiterate the commonly accepted rule of class actions: if it is "unmanageable," it should be dismissed. The question is, who makes the factual determination of manageability, the trial court or a reviewing court on a petition for a writ?

Admittedly this does not appear to be a sympathetic cause. If Blue Chip has collected tax funds improperly, it has allegedly remitted the identical amount to the State of California through the Board of Equalization. Thus Blue Chip is not painted with the brush of greed that marked the defendant in *Daar* v. *Yellow Cab Co.* (1967) 67 Cal.2d 695 [63 Cal.Rptr. 724, 433 P.2d 732].

Nevertheless all of these facts were considered in protracted pretrial hearings conducted by the trial court. This lawsuit was filed on March 1, 1971. There were lengthy discovery proceedings, in which Blue Chip participated fully. During various pretrial and class certification proceedings no less than 12 superior court judges presided. Partial summary judgment was granted in favor of Blue Chip on the first cause of action and partial summary judgment was granted to plaintiffs as to the second cause of action. Following two years of preparation the trial was set for November 3, 1975. On July 18, 1975, more than 4 years after suit was filed and approximately 90 days before the trial date, Blue Chip chose to seek writs of prohibition and mandate. The Court of Appeal properly denied the writs.

This court emphasized in *Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 851 [92 Cal.Rptr. 179, 479 P.2d 379], that ordinarily prerogative writs cannot be employed for review of intermediate rulings of a trial court. No exception was noted for class actions. We reiterated what was said in *Oceanside Union School Dist.* v. *Superior Court* (1962) 58 Cal.2d 180, 185

manageable. No class action is inherently unmanageable; a court always has access to a variety of techniques, for example, for reducing the costs of giving notice to class members or for distributing relief. The critical question, however, is whether the techniques necessary to render a class action manageable are unconstitutional, or so distort the values a particular cause of action is meant to further that class suit would be improper. Even federal courts, required to undertake manageability analysis by rule 23(b)(3) of the Federal Rules of Civil Procedure, acknowledge the contingent character of the manageability inquiry. In the leading case of *In re Hotel Telephone Charges* (9th Cir. 1974) 500 F.2d 86, for example, the Ninth Circuit held a class action to be unmanageable only after first holding that fluid recovery mechanisms are inconsistent with the policies reflected in the federal antitrust laws. (See *id.* at pp. 89-90, 90-92.)

[23 Cal.Rptr. 375, 373 P.2d 439], that where there are "interim orders, the parties must be relegated to a review of the order on appeal from the final judgment." (Also see discussion in *Pacific Tel. & Tel. Co.* v. *Superior Court* (1970) 2 Cal.3d 161, 169-170 [84 Cal.Rptr. 718, 465 P.2d 854].) The rule distilled from the analysis in *Babb* and related cases is that a writ cannot be issued to control a court's discretion, but in unusual circumstances a writ will lie where, under the facts, that discretion can be exercised in only one way.

It would seem evident that under the foregoing rule a prerogative writ would not issue to prohibit a trial judge from exercising his discretion in determining whether or not a class action lawsuit is "manageable." Indeed, a trial judge, after numerous pretrial proceedings, is manifestly better qualified to ascertain manageability as a matter of fact, and to project a program therefor, than is a reviewing court to make such determination as a matter of law.

The decision as to the showing required at the pretrial level in order to maintain a class action is within the discretion of the trial court, and that court's decision will not be disturbed even on appeal unless the court abuses its discretion. (*Petherbridge* v. *Altadena Fed. Sav. & Loan Assn.* (1974) 37 Cal.App.3d 193, 199 [112 Cal.Rptr. 144]; *Eaton* v. *Ventura Port Dist.* (1975) 45 Cal.App.3d 862, 868 [119 Cal.Rptr. 746].)

The same principle covers the trial judge's decision as to whether the named plaintiffs will fairly and adequately represent the interests of the class. (*La Sala* v. *American Sav. & Loan Assn.* (1971) 5 Cal.3d 864, 871 [97 Cal.Rptr. 849, 489 P.2d 1113]; *Vernon* v. *Drexel Burnham & Co.* (1975) 52 Cal.App.3d 706, 715, fn. 4 [125 Cal.Rptr. 147]; *Trotsky* v. *Los Angeles Fed. Sav. & Loan Assn.* (1975) 48 Cal.App.3d 134 [121 Cal.Rptr. 637]; *Residents of Beverly Glen, Inc.* v. *City of Los Angeles* (1973) 34 Cal.App.3d 117 [109 Cal.Rptr. 724]; *Scott* v. *City of Indian Wells* (1972) 6 Cal.3d 541 [99 Cal.Rptr. 745, 492 P.2d 1137].)

It is clear that to maintain a class action the plaintiffs need not establish their certainty of prevailing. As stated by the court in *Anthony* v. *General Motors Corp.* (1973) 33 Cal.App.3d 699, 707 [109 Cal.Rptr. 254], when it reversed an order of dismissal, "It is enough that it appears that evidence in support of plaintiffs' theory may be available when the case goes to trial."

Refusal of a trial court to dismiss a class action was within its discretion "to guard the integrity of the class action device," it was held in *Anthony* v. *Superior Court* (1976) 59 Cal.App.3d 760, 771 [130 Cal.Rptr. 758].

Federal courts have been more visible in the class action arena than state courts. At least three federal circuit cases have held that mandamus is an inappropriate procedure to seek review of trial court decisions to grant or deny class treatment.

In *Gold Strike Stamp Company* v. *Christensen* (10th Cir. 1970) 436 F.2d 791, the defendant in an antitrust class action sought a writ of mandamus against a trial judge who had determined that a class action was appropriate and who had ordered notice to class members. In denying the writ, the court said (at pp. 792-793): "We have previously stated that '[w]rits of mandamus and prohibition are drastic and extraordinary remedies and should be used sparingly by appellate courts. When used against a trial court, there must be a clear showing of abuse of discretion by the trial court and the right to such relief must appear clear and undisputable.' [Citation.] The question of whether to allow a suit to proceed as a class action is one primarily for the determination of the trial judge. If he applies the correct criteria to the facts of the case, the decision should be considered to be within his discretion. City of New York v. International Pipe and Ceramics Corp., 410 F.2d 295, 298 (2d Cir. 1969)."

In *Interpace Corporation* v. *City of Philadelphia* (3d Cir. 1971) 438 F.2d 401, the defendant was faced with two similar, but not identical, class actions in New York and Pennsylvania. The New York court held that a class action was inappropriate, but the Pennsylvania court ruled that a class action could proceed. The defendant then sought a writ of mandamus from the circuit court to compel the Pennsylvania court to vacate its order. The circuit court denied the writ, noting that "not every order which is not immediately appealable may be reviewed by mandamus, even though an abuse of discretion is charged," and that "a Court of Appeals may not undertake a *de novo* evaluation of the record and itself exercise a discretionary function which is committed to the trial court." (*Id.,* at p. 403.) The defendant argued "at length that respondents failed to establish the prerequisites to maintaining a class action," but the court held that "this type of argument is not a proper matter for consideration by way of mandamus."

Although permitting an interlocutory appeal (28 U.S.C. § 1292(b)), the court in *Katz* v. *Carte Blanche Corporation* (3d Cir. 1974) 496 F.2d 747, 752, assumed the impropriety of mandamus review of class treatment decisions: "If the court in entering a class action order acts outside its jurisdiction [citations] or in disregard of appropriate procedural safeguards [citation], the order may be reviewable by mandamus. But if the court has acted within its jurisdiction pursuant to appropriate procedural safeguards and in a non-arbitrary manner, mandamus will not lie. Solomon v. Continental American Life Insurance Co., 472 F.2d 1043, 1046 (3d Cir. 1973); Hackett v. General Host Corp. . . . 455 F.2d at 626; Weight Watchers of Philadelphia Inc. v. Weight Watchers International, Inc., 455 F.2d 770, 775 (2d Cir. 1972); Interpace Corp. v. City of Philadelphia, 438 F.2d 401, 404 (3d Cir. 1971)." In describing the standard of appellate review, the *Katz* court declared, "[i]f the district court has applied the correct criteria to the facts of the case, then it is fair to say that we will ordinarily defer to its exercise of discretion." (*Id.* at pp. 756-757.)

Even in normal appellate review federal courts have consistently respected the discretionary quality of trial court decisions relating to the propriety of class actions. *Price* v. *Lucky Stores, Inc.* (9th Cir. 1974) 501 F.2d 1177, 1179, was an appeal from a district court ruling which limited the injunctive relief available to a class of plaintiffs suing an employer and a union for violations of title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.). The court held that a class action determination is within the trial court's considered discretion: "As was stated in City of New York v. International Pipe and Ceramics Corp., 410 F.2d 295, 298 (2d Cir. 1969), 'the judgment of the trial court should be given the greatest respect and the broadest discretion, particularly if . . . he has canvassed the factual aspects of the litigation.' This is so because the district court is in the best position to consider the most fair and efficient procedure for conducting any given litigation. Such a determination by the court will not be disturbed on appeal unless the party challenging it can show an abuse of discretion. Wilcox v. Commerce Bank of Kansas City, 474 F.2d 336 (10th Cir. 1973); Castro v. Beecher, 459 F.2d 725 (1st Cir. 1972); Hackett v. General Host Corp., 455 F.2d 618 (3d Cir. 1972); City of New York v. International Pipe & Ceramic Corp., supra."

This rule is also recognized in *Bermudez* v. *United States Department of Agriculture* (D.C. Cir. 1973) 490 F.2d 718, 725 [160 App.D.C. 150]; *Shumate & Co., Inc.* v. *National Assn. of Sec. Deal., Inc.* (5th Cir. 1975) 509 F.2d 147, 155; *Wetzel* v. *Liberty Mutual Insurance Co.* (3d Cir. 1975)

508 F.2d 239, 245; *Kamm* v. *California City Development Company* (9th Cir. 1975) 509 F.2d 205, 210; and *Rutledge* v. *Electric Hose & Rubber Company* (9th Cir. 1975) 511 F.2d 668, 673; see also 3B Moore, Federal Practice (2d ed. 1969) ¶ 23.50.

Unquestionably the management of a vast and complicated class action is a difficult legal and administrative task for a trial court. It would be understandable if even the most skillful and conscientious trial judge were to resolve doubts against the maintenance of a class action. But once a trial court determines, after appropriate pretrial proceedings, that a class action *is* appropriate and that it *is* manageable, I fail to see the justification for a reviewing court to inject itself before trial by the heroic means of a prerogative writ to prevent the matter from being heard. If the trial court erred an appeal is an adequate remedy for the aggrieved party.

The majority have issued a cordial invitation to litigants to seek a prerogative writ in appellate courts whenever a trial court exercises its discretion contrary to their contentions. As this court, and Courts of Appeal, become inundated with writ petitions from interlocutory orders, we will rue this day and the havoc inflicted upon the rule of *Babb* and *Oceanside*.

I would deny the writ.

The petition of the real parties in interest Botney and Daar for a rehearing was denied December 29, 1976. Mosk, J., was of the opinion that the petition should be granted.