John H. ELLIS et al., Plaintiffs-Appellees,

v.

The FLYING TIGER CORPORATION, Defendant-Appellant.

No. 71–1704.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1972.

Decided Oct. 27, 1972.

Glenn W. McGee, Chicago, Ill., David Hartfield, Jr., New York City, for defendant-appellant.

Howard Arvey, Chicago, Ill., for plaintiffs-appellees.

Before SWYGERT, Chief Judge, and CUMMINGS, Circuit Judge and SPRECHER, Circuit Judge.

PER CURIAM.

The issue presented is whether the trial court abused its discretion in awarding $600,000 in attorneys' fees in approving the settlement of a class action.

This action was begun on December 18, 1970, when the plaintiffs, common shareholders of North American Car Corporation, filed a complaint seeking to enjoin a merger between North American and the Flying Tiger Corporation on grounds that a proxy statement contained false and misleading statements. The trial judge granted plaintiffs' motion for a preliminary injunction on December 21, 1970, but reversed himself the next day. Plaintiffs' motion for emergency consideration of their appeal of the denial of the preliminary injunction was summarily denied by this court on January 6, 1971, and plaintiffs thereafter moved to dismiss the appeal. The stockholders of North American approved the merger which became effective on January 7, 1971. Notice of the proceedings in the district court was sent to former North American shareholders pursuant to order of the district court.

On March 9, 1971, Flying Tiger declared a 5% dividend on its common stock to shareholders of record on March 26, 1971. Ex-dividend trading on the New York Stock Exchange began on March 22, 1971.[1] On March 23, 1971, plaintiffs filed a motion for a preliminary injunction preventing payment of the 5% common stock dividend. The petition, filed on behalf of all former common shareholders of North American who received preferred shares of Flying Tiger with conversion rights to common

---

1. The rules of the New York Stock Exchange require that shares of stock trade for five market days before the effective date of the dividend without inclusion of the dividend in any sale.

stock as a result of the merger, alleged that under the terms of the merger agreement plaintiffs were not protected by anti-dilution provisions from irreparable damage to their proportionate holdings which would follow the 5% stock dividend. The trial judge granted a preliminary injunction the same day. This injunction resulted in the suspension of trading the Flying Tiger stock on the New York Stock Exchange. The defendants filed an emergency motion with this court seeking to vacate the injunction and a hearing was set for April 1, 1971.

Counsel for each of the parties met in New York on March 28, 1971, and agreed to settle the case. The next day Flying Tiger moved to dismiss its appeal and the lower court vacated the preliminary injunction upon agreement of the parties. The settlement was approved on May 27, 1971.

Under the terms of the settlement agreement, Flying Tiger agreed to recommend that its shareholders vote to approve full dilution protection for holders of preferred stock and warrants against dividends on Flying Tiger common stock payable in common stock. The agreement also provided that any member of the plaintiff class who had converted preferred stock into common stock between March 9, 1971, and March 26, 1971, would be entitled to rescind such action. Finally, the agreement provided that Flying Tiger would pay for the costs of notice to the class and would pay "reasonable attorneys' fees."

Thereafter, attorneys for both parties filed memoranda and proposed findings regarding reasonable attorneys' fees. The district court accepted plaintiffs' proposed findings as written, merely filling in the space left blank for the amount of the award. The amount of attorneys' fees awarded was $600,000. The trial judge gave no reason for his award in this amount.

### I.

█ The district court has wide discretion in awarding attorneys' fees, subject to the requirement that the award be fair and reasonable. *See* Harris v. Chicago Great Western Ry. Co., 197 F.2d 829 (7th Cir. 1952). The reasons for this allowance of discretion are several. The trial judge is generally in the best position to assess the skill and competency of counsel in developing a factual record and legal theory, to evaluate the difficulties in preparing the case and the reasonableness of the claimed time expended by counsel, and to determine the reasonableness and propriety of settling a case upon the terms agreed to by the parties.

█ The discretion permitted a district court is, however, predicated on the assumption that the trial judge has carefully considered the factors described above, and that he has heard testimony and examined statements prepared by the attorneys substantiating the value of the benefits received by the plaintiff class and the hours expended by the attorneys on the case. Where, as in this case, there is nothing in the record to indicate what factors the trial judge deemed important in making his award, there can be no basis for adhering to the rule of discretion.[2]

### II.

It has been generally held that an appropriate award of attorneys' fees should be determined on the basis of several elements, including the skill and reputation of counsel, the time expended by attorneys in preparing the case, the novelty and difficulty of the legal issues presented, and the benefits conferred upon the class. Angoff v. Goldfine, 270 F.2d 185, 189 (1st Cir. 1959); State of Illinois v. Harper & Row Publishers, Inc., 55 F.R.D. 221, 224 (N.D.Ill.1972); In re Westec Corp., 313 F.Supp. 1296, 1303–1304 (S.D.Tex.1970).

---

2. *Cf.* State of Illinois v. Harper & Row Publishers, Inc., 55 F.R.D. 221 (N.D.Ill.1972).

The district court held that the dollar value of the benefits received by the class was $4,061,208.[3] Counsel for plaintiffs argues that the amount of attorneys' fees awarded is, if the fee is included within the benefit computation, approximately 13% of the total benefit and thus well within the range of recovery permitted by other courts in similar cases.[4] Assuming this to be true, it does not answer the question of whether a percentage award is appropriate under the particular circumstances of this case.

We believe several factors indicate that a relatively large percentage award is not appropriate in this case. In awarding attorneys' fees, it is ordinarily expected that the benefits conferred upon the class are achieved through the direct effort and skill of the attorneys involved. It is far from clear that this was so in the instant case. Subsequent to the announcement of the 5% stock dividend, the Internal Revenue Service published proposed regulations which might have had the effect of making the 5% stock dividend taxable to the Flying Tiger common shareholders unless a corresponding dilution adjustment was made in the convertibility terms of

the preferred stock and warrants.[5] Flying Tiger now states that any benefits accruing to the plaintiff class were the direct result of this change in the tax law and not from any efforts of plaintiff counsel. This argument is supported to some extent by the settlement agreement. The agreement states among the reasons for deciding that settlement was advantageous for all the parties, the following:

"WHEREAS, after the declaration by Flying Tiger on March 9, 1971 of a stock dividend, the Internal Revenue Service released proposed regulations that would subject the dividend to ordinary income tax treatment when received by Flying Tiger stockholders; and the management of Flying Tiger, on advice of counsel, has stated that it will recommend to its shareholders an amendment to the terms of the Preferred Stock and Warrants described in paragraph 1 below *primarily in order to avoid the impact of such regulations and also to serve as a basis for settlement of this action, . . .*" (emphasis added).

It further appears, both from the settlement agreement and statements of plaintiffs' counsel at oral argument on

3. This total was computed on the following basis:
   Anti-dilution protection for the preferred shareholders from the 5% stock dividend declared on March 9, 1971 ............... $2,673,869
   Anti-dilution protection for the warrant holders from the 5% stock dividend declared on March 9, 1971 .................... $1,273,230
   Option to rescind for those preferred shareholders who had exercised their rights to convert to common stock from March 9, 1971, through March 26, 1971 ................................. $ 114,109

4. The plaintiffs cite Hornstein, "Legal Therapeutics: The 'Salvage' Factor in Counsel Fee Awards," 69 Harv.L.Rev. 659 (1956), and cases discussed there as authority.

5. Proposed Regulation § 1.305–3(d), published in vol. 36, No. 53, Federal Register, March 18, 1971, provides:
   "If a corporation has convertible stock or convertible securities outstanding and distributes a stock dividend with respect to the stock into which the convertible stock or securities are convertible, no increase in proportionate interest in the assets or earnings

and profits of the corporation by reason of such stock dividend shall be considered as having occurred provided—
   (1) An adjustment in the conversion ratio to reflect such stock dividend is made . . . , and
   (2) The distributing corporation attaches to its income tax return for the taxable year of the distribution (i) a statement that the corporation elects to make an adjustment in accordance with the provisions of subparagraph (1) of this paragraph, and (ii) a copy of the corporate authority for such an adjustment procedure."

the issue of attorneys' fees, that plaintiffs may have had a strong motive for reaching an agreement to settle the case, regardless of any benefits which might fortuitously be conferred upon the class they represented, at the time the parties agreed to meet in New York. As previously stated, the effect of the trial judge's granting of plaintiffs' request for a preliminary injunction against the issuance of the stock dividend was a suspension in all trading of Flying Tiger stock on the New York Stock Exchange. A prolonged suspension of trading would have had a detrimental and perhaps disastrous economic effect on all Flying Tiger shareholders, including the plaintiff class. Counsel for plaintiffs stated during argument below:

> "At that time . . . we became quite concerned because on the following day, Wednesday, the New York Stock Exchange stopped trading in the securities of Tiger, which was listed on the New York Stock Exchange. We started calling the New York Stock Exchange and representatives of the company in an effort to work out an interim agreement among us, prior to the Court of Appeals ruling, which would permit the shares to be traded." (App. 305).

> "My main purpose in going there [to New York] was to obtain the resumption of trading." (App. 306).

The settlement agreement also indicates that a primary purpose in deciding to settle was the potential disastrous effect of the suspension of trading on the New York Exchange.[6]

A further consideration in awarding a substantial percentage of the shareholder benefits to counsel has been the amount of effort expended in preparing

the case. Successful counsel in many cases have achieved the class benefits only after extensive discovery, successive appeals and development of new legal theories or implementation of older theories to apply to a new set of facts. In this case there does not appear to have been any discovery or even any preparation for trial on the merits of the case. The record does not indicate that any new developments in the law have resulted from this litigation; both appeals, resulting from the granting or denial of preliminary injunctions, were dismissed pursuant to motions by the parties.

In their petition for an award of attorneys' fees, plaintiff's counsel stated that the number of hours spent in preparation of the case totaled 570.[7] The district court made no finding that this was a reasonable expenditure of time considering the skill and competency of the average attorney; however, we will assume for purposes of this appeal that the number of hours claimed was reasonable. If the $600,000 award were to stand, the attorneys would therefore be paid approximately $1,000 an hour for their time. Although the amount of time expended in preparation of a case is ordinarily only one factor to be considered by a district court, we think that the circumstances presented here necessitate a decision based somewhat more closely on the number of hours actually spent in preparation than would be the case where substantial benefits had been achieved following protracted or particularly innovative litigation.

In conclusion, based on a study of the course of this litigation, the difficulties and preparation time involved, and the benefits achieved for the class, we think an award of $75,000 is appro-

---

6. The agreement states:
"WHEREAS, plaintiffs through their attorneys obtained an agreement in principle to settle this matter on reasonable terms and *were acutely concerned about the suspension of trading privileges* of the Flying Tiger securities on the New York Stock Exchange and the American Stock Exchange and the

possible adverse effects of this suspension on the value of these securities . . ." (emphasis added).

7. Plaintiffs' total of 797 hours included 227 hours spent in preparing and litigating the issue of attorneys' fees in the court below.

priate and entirely adequate.[8] This award amply compensates the attorneys both for their time and their efforts to bring this litigation to a conclusion that would benefit the plaintiff class. The award will be reduced accordingly.

Reversed.

8. The parties agreed that the proper amount of costs and disbursements was $2,642.73. This amount is not included in the $75,000 award.