Martin J. WHITMAN, directly as a Director of the Cyprus Corporation and derivatively as a stockholder on its behalf, Plaintiff,

v.

J.B. FUQUA, Joseph P. Kazickas, Robert Redfearn, Willard F. Rockwell, Jr., Don N. Stitt and the Cyprus Corporation, Defendants.

Civ. A. No. 82–516.

United States District Court,
W.D. Pennsylvania.

March 24, 1983.

Paul Titus, Pittsburgh, Pa., for plaintiff.

Donald J. Balsley, Jr., Pittsburgh, Pa., for defendant Cyprus Corp.

Gilbert Helwig, Pittsburgh, Pa., for defendant Rockwell.

## OPINION

ROSENBERG, District Judge.

This matter now before me is for a possible final determination of the above entitled matter. Its feature question presented by the joint motion is for approval of the payment of attorneys' fees and expenses to the extent of approximately $1,458,000.00.

Presumably it requires a determination of a multiform and bitter contest between the plaintiff, Martin J. Whitman, and the defendants, J.B. Fuqua, Joseph P. Kazickas, Robert Redfearn, William F. Rockwell, Jr., Don N. Stitt, and The Cyprus Corporation, over the control of operations of The Cyprus Corporation.

Two simple questions, only, had been presented before this court in two different cases: the first was in *Whitman v. Fuqua et al.,* No. 82–28 (W.D.Pa.1982). The plaintiff was successful in challenging the defendants before an election of The Cyprus Corporation, a non-diversified close-end investment company registered under the In-vestment Company Act of 1940, 15 U.S.C. § 80a–5. Not only was the plaintiff successful in challenging the proxy notices but was also successful in the campaign which followed after the entry of an order of this court for the election, including himself, of four directors to represent the preferred stockholders as against the opposition candidates. The opposition candidates for the election of directors to represent the common stockholders were not challenged.

The second question presented in this second and subsequent action against the same defendants brought by the plaintiff was challenged also successfully in having an *ultra vires* meeting held at Fort Lauderdale, Florida, by the hold-over directors and officers a few days after the election in an effort to circumvent the election by cancelling out the failure of two amendments to the constitution which the stockholders voted down to convert this non-diversified, close-end investment company into a speculative corporation; and to deprive the newly elected directors of the power to participate in the control of The Cyprus Corporation for the future.

I made findings of fact and conclusions of law in Civil Action No. 82–28, and these I now incorporate in and make a part of this opinion. *Whitman v. Fuqua et al.,* 549 F.Supp. 315 (W.D.Pa.1982).

Thus, only two questions were presented to this court. In the first case one related to proxies and election, and in the second case, now, a question of the payment of fees of attorneys and expenses to a total of 58 attorneys.

From this action in the Western District of Pennsylvania, two other branches developed into one action by the defendants in New York and a second action by the defendants in Delaware. Both the actions in New York and Delaware are not a part of this record, and the only relationship this court has with those actions is because of the courtesy of counsel in sending it copies of the complaints. I found no basis as of that time, upon receipt of the copies of the complaints, nor do I find any reason now, for the entry of either of these actions,

except for the purpose of the hindering, injunctive proceedings filed in those other jurisdictions.

In order to approve payment of fees and expenses to so many lawyers in an action such as this, who seek to take a part of the wealth of the owners of preferred and common stock, simply because a large fund is available in the treasury of the corporation, requires a concern for the owners of these shares of stock who were not in actuality represented in this court. Here we have two hostile factions embracing in a harmonious consent to pay without question what the attorneys claim.

The Cyprus Corporation maintains its principal management offices at Two Chatham Center, Pittsburgh, Pennsylvania. It deals primarily with investments in stocks, bonds and other financial instruments. These are principally conservative, highly-liquid investments which provide steady income without speculation or great risk of loss. Cyprus was incorporated in the State of Delaware on April 27, 1973, for the purpose of carrying on the business of a management investment company and to do all those acts and activities in which it may be lawfully engaged. Over a period of time the corporation has issued approximately 2,400,000 shares of preferred stock, and 34,000,000 shares of common stock.

Rockwell with his partisan associates acquired power and control of the corporation in various ways. He became the largest stockholder by a single purchase of common stock in September, 1981. His dominated group eventually purchased the controlling interest of 17% of outstanding common stock for approximately $4,300,000.00. Thereupon, Rockwell was appointed Chairman of the Board of Directors and selected the present management. Only after my Opinion of October 14, 1982, did he begin to acquire either the ownership or control of preferred shares of stock.

The preferred stock has a guaranteed priority with regard to redemption and dividends, and most if not all of the net assets of the corporation are committed to the scheduled redemption of the preferred stock. Therefore, there was an inherent conflict between the long-term interests of these two groups: the preferred stockholders desired this investment company to continue to maintain a conservative low risk portfolio of securities and other liquid assets; while the common stockholders led by Rockwell commenced efforts to transform the corporation from an investment company to an operating company. Such a transformation would produce inherently greater risk to capital, but it would also provide a greater opportunity to make large profits and create value for the common stock.

This was the expressed opinion of Rockwell from the beginning to convert the character of The Cyprus Corporation which theretofore had been an investment company to a more or less speculative corporation and operate accordingly. Martin J. Whitman purporting to represent the majority of the preferred stockholders desired to maintain the status quo of the underlying securities and complained to this court in the original action in his capacity as an individual and as a trustee or custodian for other preferred stockholders. The purpose of this action was to compel management to furnish additional information to all stockholders, both preferred and common, regarding Board candidates and to procure certain amendments to the constitution which would have given power to the appropriate authorities to convert the security phase of the corporation into a speculative one, prior to the forthcoming election.

After appropriate discussions and compromises, and the procuring of conciliations by this court, this court caused the election to be postponed and permitted the plaintiff and all other parties time and opportunities to have proper information sent to all shareholders prior to the election and the vote on the amendments. The defendants cooperated in this connection and gave even more information than this court had suggested, with the result that after appropriate campaigning upon the information so sent, the election resulted in the choosing of four common stock directors approved by the Rockwell group and four preferred

stock directors approved by the plaintiff's group. However, the election did not end the matter and it appeared to cause more strife, when the old group held a meeting without notice and in disregard of the newly elected directors at Fort Lauderdale, Florida, which meeting occurred a few days after the election, and when the old Board and its officials knew of the results that had been announced previously of the newly elected officers and the defeat of two of the more speculative amendments; and that matter was brought to the attention of this court.

With the holding of the meeting at Fort Lauderdale by the old groups, a new action was brought against the defendants in an Amended and Supplemental Complaint filed in June, 1982 which was filed at the above number and term. With the conflict of attitudes the directors were unable to hold meetings because of the disagreement and antagonism that were manifested, and the corporate management lacked Board direction. Here began the problem for this court of beginning to protect the stockholders. As a result of this conflict in the assertions and denials, I delegated a United States Magistrate to procure information, independently, of the financial conditions of the corporation in order to ascertain the contentions of the plaintiff and defendants. The magistrate was given the power to procure such expert information as he needed and file a report with this court. Aside from the report of the magistrate, I held that any action taken at the meeting was *ultra vires* and could not bind the representatives of the corporation as they were elected at that meeting. I then attempted to procure conciliation amongst the lawyers representing both the plaintiff and the defendants, and eventually this did occur because now I am called upon to make a determination as herein set forth.

1. Rule 23.1 provides in pertinent part that "The action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders or members in such manner as the court directs."

A "Joint Motion for Approval of Settlement" was submitted by counsel for both the plaintiff and the defendants, and requested a hearing on the proposed settlement, pursuant to Federal Rule of Civil Procedure 23.1.[1] This court then required that notice and a copy of the stipulation of settlement be sent to all stockholders and to other interested parties, presumably financial institutions.

I did not take cognizance of the instant motion immediately because the defendants had appealed my determination and the matter was then before the United States Court of Appeals for the Third Circuit, and I had no jurisdiction at that time. *United States v. Hitchmon*, 587 F.2d 1357, C.A. 5, 1979. While the matter was on appeal the parties arrived at an agreement and prepared a stipulation to present to this court, and procured an order from the Court of Appeals by Judge Sloviter to remand the case to this court, so this court could "review and rule upon" the joint motion as filed by all the parties.[2]

Upon the return of jurisdiction to this court, I required the sending of a comprehensive and informative notice of the proposed settlement with all explanatory documents to the shareholders of record as of January 19, 1983, and to all legally interested parties.[3] The notice set forth the time for a hearing as the 16th day of February, 1983 at 10:30 o'clock a.m., and provided that anyone who desired could send written objections or comments to the Clerk of Court for the Western District of Pennsylvania, and allowed anyone to appear in person or by appropriate representation at the hearing and present any relevant matters for the consideration of the court. Approximately a dozen or more objections and comments were sent, received and read into the record at the hearing. One stockholder testified.

2. Order of the Court of Appeals for the Third Circuit dated December 22, 1982.

3. Order of Court, dated January 17, 1983, Document No. 62.

The Agreement of Settlement between the two factions (which provides for the dismissal with prejudice of all litigation pending before this court) would resolve this conflict through a tender offer for up to 1,250,000 shares of Cyprus $1.80 Cumulative Preferred stock at a price of $16.00 per share, the resignations of the preferred directors, and the payment by The Cyprus Corporation of all attorneys' fees and expenses of the litigation.

On February 16, 1983, a hearing was held to consider the motion to approve the settlement. At the hearing, as I stated, I noted that objections to the settlement had been received and I read the pertinent parts into the record. Basically three issues were raised by the letters: (1) whether the terms of the proposed settlement were fair to both preferred and common stockholders; (2) whether the terms of the tender offer gave an unfair preference to the plaintiff and other preferred directors; and (3) whether the reimbursement to all parties for expenses and attorneys' fees in connection with this action and related litigation were reasonable and justifiable.

There were a few vague, general objections as to whether the settlement favors either the common or preferred stockholders, but I note an almost uniform acceptance of the specific terms of the tender offer, at greater than the market price for the preferred shares, and the general feeling that the corporation which emerges from this agreement will be free from the encumbrances of this dispute.

The second objection, the concern that the preferred directors may somehow have an unfair advantage in the tender of their shares was proved to be unfounded. The president of The Cyprus Corporation, Donald N. Stitt, testified that there was some confusion as to the requirement of the preferred directors to tender all of their shares. Even though the preferred directors must tender all of their shares, according to the terms of the tender offer, they will be treated identically with all the other preferred stockholders. Specifically, if more than 1,250,000 shares of preferred stock

were to be tendered, all of the shares tendered would be pro-rated on exactly the same terms.

This court is in high accord with the desire of the parties to bring this matter to termination and to finally permit shareholders to know where they stand and protect their interests. This is, and was the prime concern of this court. The agreements between the parties were such as to be immediately acceptable, except for the matter of allowance of attorneys' fees, and it is this matter which took much effort, study and concern on the part of this court in an effort to arrive at what would be legal, appropriate, fair and just to the shareholders in addition to counsel who presented the claims for attorneys' fees.

After a meticulous scrutiny of the amounts of money which were set forth as expenses in lumped sum manner, I am not judicially satisfied that all of these were appropriate and proper charges against the treasury belonging to the stockholders. However, only for the sake of the greater benefit of arriving at a complete and hopefully final determination of this dispute in settling the corporate entity, its participants and its investors at ease, I conclude a settlement, now, is judicially feasible. Because of the position in which counsel have at this point placed the court, I make the best of the situation as counsel presented it. Counsel agreed to everything. Counsel fixed the terms. Counsel provided harmoniously for part of the corporate treasury. All of this was done by stipulation and hurriedly placed before the court with full knowledge that this court was anxious to have this case accelerated and terminated, since the court did everything in its power in conferences of counsel to have this done.

I repeat that if now I should demand that everything be done with the strictest legal formality, with due process of law and the proper evidentiary supports under all the circumstances of this case, this case could not terminate so quickly and the Cyprus affairs would be left in a state of confusion; while at the same time some unidentified individuals are blaming this court for the

position in which the activities of counsel have placed it, by a sudden deluge of anonymous telephone calls condemning this court for procrastination and incompetence.[4]

Counsel for the parties, it seems, presented this motion for settlement to this court, in practicality, as a *fait accompli,* and presumably contemplated that all this court would have to do would be to give notice in accordance with Federal Rule of Civil Procedure 23.1, and that it had nothing further to do than to approve the settlement agreement. But while there may be some truth in such an assumption, it is not true that this court is given the right or the power to passively approve the agreement, simply because the attorneys entered into it and to require the court to blindly approve their total stipulation. Yet while the agreement does take the case out of the character of the ordinary class action or common benefit rule, it nevertheless imposes on this court some responsibilities. That, this court concludes is so, because it is in this case a court of equity and because of many general judicial rules laid down by our courts for the guidance of a district court in the allowance of attorneys' fees and expenses.

While no sworn supports of the individual 58 attorneys were here, as this court believes it should be for a basic adjudication of any kind, and even though the stipulation of counsel stands as a bulwark in foundational fashion to constrain the court into a speedy and superficial approval, this court, nevertheless, has not only the responsibility but the duty to apply discretion in unusual circumstances. I deem this case to be one of these.

Thus, while speed is being applied in the course of my constant, everyday work as I conscientiously examine, research and apply the law, I am convinced that this court may approve certain portions of this agreement with which there is factual familiarity and jurisdiction and customary regulations of law as relates to attorneys' fees.

This court made sure that appropriate notices were given to all concerned; that a hearing be held as required; that the privilege of all of the owners of the 36,000,000, more or less, shares of stock be respected, and that a request be made of individual supports for attorneys' fees and expenses. It was not expected that counsel would not file affidavits in proper fashion. However, with what familiarity I have with this case and particularly of local counsel, I am not convinced that affidavits by the individual counsel would strengthen any judicial decree. This is so because, as I frequently state here, because this case must come to an end, the sooner it does the more are the benefits which will accrue.

The fact that much of the attorneys' fees and expenses have already been paid is only a part of the presumed *fait accompli* which was incorporated in the agreement. This court does not take any responsibility for this circumstance. If the payments were wrongfully made, the responsibility will be upon the appropriate persons to have such corrected. This court determines merely the responsibilities and fairness of payments for attorneys' fees and expenses which can be adduced from all of the record before this court and as the court has personally observed and experienced the processing function.

This court required proof of the stability and legality of the claims from the claimants themselves, but that never came. Instead this court was furnished with the affidavit of "Don N. Stitt", the president of the corporation which detailed and summarized claims of each of the claimants, but all of them without legal evidentiary supports. Not a single affidavit was presented by any one of the 58 claimants to support his or her demand.

In the affidavit of Don N. Stitt are presented hours, fees, rates, expenses and the like. It would take much too much time and space to show the fallacious method by which such claims are presented to the court for judicial adjudication.

The claimants and the parties presented in legal fashion only the testimony of a

4. I would be loathe to accuse any interested parties, in this series of acts for propaganda.

prominent member of this Bar, John J. McLean, Jr., Esquire, who is in my opinion of high reputation. He testified to the fact that he had examined all of the work reports of the attorneys and that he found them to be representative of customary fees paid to counsel in this type of litigation and that the reports were such that made it easy and pleasant for him to perform his duties in the examination of such records.

This court is familiar with the high competence of John J. McLean, Esquire, and has known him over the past many years as one of reliability and credibility. However, his testimony was not specific enough to make a determination of the real questions which faces this court. Attorney McLean testified, I assume, as a member of the Allegheny County Bar, of the reasonable fees which were demandable and allowable in this area. He said nothing whatsoever about the fees which would be fair and just as lawyers in New York and Delaware who presented claims, and what they might be entitled to because of customary fees in those areas or of the character of work done by these attorneys. The problem must be determined on whether some of these attorneys should be allowed the exaggerated amounts in comparison to the amounts being claimed in this jurisdiction.

█ If the claims for attorney fees are based on affidavits without a hearing, it is not necessary to establish the value of lawyers' services by expert testimony. *Tranberg v. Tranberg,* 456 F.2d 173, 175, C.A. 3, 1972. That differs from our case because of the fact that this court did give notice of a hearing, allowed filing of objections and held a hearing on all matters presented in the motion for settlement, as was already stated.

█ The law allows stockholders reimbursement for their attorneys' fees in prosecuting a successful legal action wherein the corporation's property or legal rights obtain protection. *Taussig v. Wellington Fund, Inc.,* 187 F.Supp. 179 (D.C.Del.1960), affirmed 313 F.2d 472, C.A. 3, 1960, cert. den. 374 U.S. 806 (1963); *Shlensky v. Dorsey,* 574 F.2d 131, C.A. 3, 1978.

Fee allowances in this area have been viewed as an incentive as well as a just reward for benefitting the corporation. *Denny v. Phillips & Buttorft Corp.,* 331 F.2d 249, C.A. 6, 1964, cert. den. 379 U.S. 831, 85 S.Ct. 61, 13 L.Ed.2d 39 (1964).

█ This court by law may take notice of the customary rates in the community for attorneys of comparable standing, skill and experience. Judge Seitz in *Lindy Brothers Builders, Inc. of Philadelphia v. American R. & S. San. Corp.,* 487 F.2d 161, C.A. 3, 1973, at page 169 said:

"A judge is presumed knowledgeable as to the fees charged by attorneys in general and as to the quality of legal work presented to him by particular attorneys; these presumptions obviate the need for expert testimony such as might establish the value of services rendered by doctors or engineers."

█ When it comes to allowing attorneys' fees, the law requires a judge to scrutinize the attorneys' claims which are personal to them. When, however, a group of adverse lawyers harmoniously stipulate to the totality of their claimed demands, the law expects the district court to weigh all the circumstances more closely particularly where thousands of small investors who will ultimately bear part of the fee payments have no legal representatives to do so.

█ The goal which this court must attempt to reach is by the legal principal that the test for the award of attorneys' fees is whether there has been a substantial benefit conferred. *Kopet v. Esquire Realty Company,* 523 F.2d 1005, 1008, C.A. 2, 1975.

The benefits which this court attempts to reach in approving the settlement as it does, is for the present and for the future of all concerned. Even the payment of possibly exorbitant fees, while unjust, would be cheaper and more justifiable than to expose the corporation and its owners and would-be investors to much more potentially and litigable attorneys' costs during an unlimited protracted time in the future. The benefits which this court looks

for in this settlement are as already expressed: end of litigation and annoyance to all concerned, especially stockholders; an avoidance of large future legal expenses; and tranquility in the Cyprus corporate existence and all its present and future investors.

■ But as it has been said, this matter came to the court upon the agreement of both sides who have harmoniously consented to the payment of these sums of money to all of them, and it may be said that such settlement agreements are desired by the courts and are valued for guidance, but the courts are not bound by these agreements of the parties. *Norman v. McKee,* 431 F.2d 769, C.A. 9, 1970.

■ Even though there may be no objection to the fees, the court still has an obligation to scrutinize the award. *Benerofe v. Bartlett,* Fed.Sec.L.Rep. (CCH) 95,260 (S.D. N.Y.1975). The court may, however, request the attorneys to submit affidavits, documents and other information bearing on the pertinent consideration. *Frooks v. Barnett,* Fed.Sec.L.Rep. (CCH) 94,903 at 97,072 (S.D.N.Y.1974). Because, as already stated, of the urgency with which this matter is presented and the potential settlement capable of being achieved and consummated, with only the hearsay affidavit evidence of the president of The Cyprus Corporation and with the record as it stands, together with all the information which was garnered by this court during the processing of both cases in this court, and with what information the court has concerning the activities of counsel who appeared before it, I deem it judicially advisable to avoid the risk of a possible failure of the settlement and its resultant potential continuation of futile antagonisms between the parties.

■ However, such an approval by the court under these circumstances must be with the strictest application, equitably and with highly conscientious consideration. This conclusion which I now state is not without authority. *Ellis v. Flying Tiger Corp.,* 504 F.2d 1004, C.A. 7, 1972. In *Ellis,* this was said,

"The trial judge is generally in the best position to assess the skill and competency of counsel in developing a factual record and legal theory, to evaluate the difficulties in preparing the case and the reasonableness of the claimed time expended by the counsel, and *to determine the reasonableness and propriety of settling a case upon the terms agreed to by the parties."* (Emphasis added)

Thus, it is a determination on this court's part of the propriety of settling this case, not exactly upon the terms agreed to by the parties, but substantially so. So that while I do not have individual affidavits of each claimant, I do have individual statements of each claimant as it was presented in the affidavit of The Cyprus Corporation president, concerning the time expended and the rates of pay. My responsibility is to place all these in their related positions. *Ellis v. Flying Tiger Corp., supra.*

The elected officials are authorized to agree to payments in behalf of all shareholder owners of the corporation. One question although not directly presented to me in the absence of any evidence to support it is: Was there any bad faith on the part of the corporate executives in submitting the agreement to pay all these, presumably unrestricted attorneys' claims?

Speculation on my part will not be a legally sufficient substitute for any unpresented evidence, if any exists. One other equitable reason under these circumstances to disapprove or not to put the best possible portions of the settlement agreement into effect, would be that it was contrary to public policy. However, the dates and congressional acts and judicial decisions confirm the public policy principle to allow attorneys' fees where none was allowed before, and "not with excessive frugality" in doing so. *Ray Marshall, Sec. of Labor v. United Steelworkers of America, et al.,* 666 F.2d 845, 854, fn. 5, C.A. 3, 1981.

When settlements creating a fund and a party creates that fund, the courts have no problem in determining that fees should be awarded. But the parties did not create a

fund here. The only "fund" is that portion of the corporate treasury which is now being sought by all counsel.

The great problem which is presented to this court is not by the numerical strength of attorneys, nor of any great baffling legal questions, but only by equitable or conscientious concern by this court to preserve as much of this Cyprus treasury and funds belonging to the owners of stock as the court may possibly do.

New York counsel have made demands, and I refer to one particularly who claimed $250.00 an hour, even though he made no appearance in this court or distinguished himself in any way in this case. He stated that he performed approximately 20 hours per week in each of three weeks without stating the character of work he performed and what compelled such a charge for the work, or what required him to work those hours. Another lawyer from the same firm in a two-week period billed 128 hours one week and 94 hours the next, at a rate of $150.00 per hour, presumably as a subordinate counsel. Although this lawyer was present in this court in conference, he did not utter one word. Nor did he explain what compelled him to work beyond what might ordinarily be called counsel "union" hours. This makes the problem of this court difficult to resolve and do it fairly and justly. Under these circumstances I can only compare the counsel fees of chief, subordinate and office or staff lawyers and aides to the prominent lawyers in this area whose hourly rates were $170.00 per hour, $165.00 and $100.00, and their staff charges.

It is not easy to allow these attorneys' fees or claims as presented under the circumstances which appear before me, because there are thousands and thousands of people, some very small owners of stock, some of whom are scattered over the world and who are the ones who will, in the ultimate, be paying these bills and who cannot because of circumstances appear in a group or hire attorneys because of their small holdings to spend large sums of money to inquire into or contest these claims. Thus, to the extent that this court can

equitably and in good conscience do, it has examined the claims but not as an advocate of these scattered shareholders but as a chancellor in a court of equity relating to their interests and rights, and as well possible wrongs.

It is appropriate that I mention these facts for the reason that the opportunity exists by law for attorneys to collect unwarranted or exorbitant fees these days. Even the government itself can be coerced into what can easily become unjust claims by reason of the ulterior motives of pecuniary gain by some members of the legal profession. I say this only because of the fact that it is apparent to the court in this action that bills have been ambitiously presented for services from approximately $150,000 to over $600,000. The legal profession should realize that such fees may in themselves be the working of injustice, where there are no supervisory controls.

However, in considering this, the court minutely, and with much research and introspection concluded that a settlement of a case under ordinary circumstances is desirable, and in this case it is highly desirable to have as much cooperation of the court as the court can possibly give it. That is a matter of simple logic. If this court does not approve a settlement which is legally appropriate, even though not legally substantial, in order to permit the Court of Appeals to know upon what basis this court is allowing the settlement, the funds of the shareholders will be further liable to attack for greater fees from attorneys in future litigation. That litigation must be stopped as soon as possible to permit the corporate administrators to be able to function in the future and for the benefit of litigants particularly, but more so for the benefit of the stockholders themselves. Thus, I shall approve as best I can the fees as stipulated by counsel to the extent to which the same appear to have as much reasonableness as I can possibly credit to the various claims.

I am also familiar with various guides which have been established by law and by various agencies to help the courts to arrive at fair, adequate and appropriate attorneys'

fees. But there are no guides here to help this court determine upon what bases the total payments as agreed to for settlement can add any knowledge, wisdom and discretion to this court to fix fair and adequate compensation and expenses. However, two benefits which must be a goal by this court of equity are first, that it will end the Board of Directors conflagration and second, will stop the accrual of any more devastating attorneys' fees.

Since counsel from New York have sought amounts exceeding those of counsel in the Western District of Pennsylvania, it is in my opinion inappropriate that they be paid such sums of money and should be paid no more than those who are receiving reasonable and not necessarily frugal attorneys' fees and expenses in this Circuit. This is so because I have no supports from these attorneys which would give me the discretionary right to allow them greater fees than those which are customarily and reasonably allowed in this jurisdiction.

Accordingly, I shall allow the fees and expenses of the attorneys in other jurisdictions on the same basis and rate for the level of the employees' hourly service in their staffs, as those allowed in the Western District of Pennsylvania jurisdiction. In other words, no hourly rate exceeding the $170.00 per hour charged by the plaintiff's lead trial counsel will be allowed for the chief counsel and amounts different from those in this jurisdiction comparably to this employment status. This settlement will be approved as stipulated by counsel to that extent.

The suggestion by certain counsel that a record of this case be expurgated or sealed will not be followed and the entire record shall remain for the factual matters contained therein.

I am cognizant of the fact that the principle upon which this court rests approval of attorneys' fees may not meet with appellate court concurrence. Under such circumstances, or upon return for verified proof by each claimant, the settlement will of necessity be delayed until such compliance is had. In the meantime, this court's limited ap-proval of the agreement will stand for the purpose of expedience and expeditious benefits to all concerned.

The Findings of Fact and Conclusions of Law are incorporated in this opinion in accordance with Federal Rule of Civil Procedure 52.

## ORDER OF COURT

AND NOW, TO–WIT, this 24th day of March 1983, the Joint Motion for Settlement is hereby approved in accordance with the foregoing Opinion; attorneys and their working assistants outside the Western District of Pennsylvania shall be governed by the rate of pay as set forth in the claims as made by counsel in this District and their comparable assistants, and no greater.

The motion by the plaintiff to postpone the order approving settlement needs no consideration on the basis of mootness.