[No. H027476. Sixth Dist. Dec. 9, 2005.]

JEROME FEITELBERG, Plaintiff and Appellant, v.
CREDIT SUISSE FIRST BOSTON, LLC, et al., Defendant and Respondent.

1000

1002

### COUNSEL

Gold Bennett Cera & Sidener, Solomon B. Cera, Thomas C. Bright and Gwendolyn R. Giblin for Plaintiff and Appellant.

Davis Polk & Wardwell, Erik M. Zissu, Zachary S. McGee and Lawrence J. Portnoy for Defendant and Respondent Credit Suisse First Boston.

Keker, Brockett & Van Nest, Elliot R. Peters; Howard Rice Nemerovski Canaday Falk & Rabkin, Jerome B. Falk, Jr., Kenneth G. Hausman, Barbara A. Winters and Mark A. Sheft for Defendant and Respondent Frank P. Quattrone.

### OPINION

**McADAMS, J.**—This is an appeal from a judgment of dismissal entered after the trial court sustained defendants' demurrer. The dispositive issue before us is whether the remedy of nonrestitutionary disgorgement is available in a class action asserting violation of the state's unfair competition statutes. We conclude that it is not. We therefore affirm the judgment.

### BACKGROUND

In June 2003, plaintiff Jerome Feitelberg filed this action "on behalf of himself and all others similarly situated . . . and on behalf of the General Public," against defendants Credit Suisse First Boston, LLC (CSFB), and its former employee Frank P. Quattrone. The complaint asserts that defendants

engaged in unfair business practices, in violation of the California statutory scheme commonly known as the unfair competition law or UCL. (Bus. & Prof. Code, § 17200 et seq.;[1] see generally 11 Witkin, Summary of Cal. Law (2004 supp.) Equity, § 93, p. 493.)

The complaint makes these assertions: Defendant CSFB issued biased stock research reports to gain favor with investment banking clients. As a result of this conflict of interest, the reports produced by CSFB's stock analysts "contained exaggerated or unwarranted claims" and failed to provide those holding the subject companies' stock with "a sound basis for evaluating" their investments. This conduct is "unfair and unlawful." It also violates rules of the New York Stock Exchange (NYSE) and the National Association of Securities Dealers (NASD). Defendants made "substantial profits and/or received substantial compensation as a result of these wrongful and unfair business practices."

The complaint also notes the existence of a "global settlement" between "10 Wall Street firms, including CSFB" and various regulatory bodies, including the Securities and Exchange Commission and state regulators. As to CSFB, the settlement was entered as a consent judgment in October 2003 in United States District Court for the Southern District of New York. That judgment imposed injunctive relief and monetary sanctions.

The complaint in this matter seeks class certification, an injunction, disgorgement of defendants' "ill-gotten gains," and other relief.

In July 2003, the case was removed to federal court by defendants, based on their contention that the action satisfies the requirements of the federal Securities Litigation Uniform Standards Act, 15 U.S.C. § 78bb (SLUSA). (See *Feitelberg v. Credit Suisse First Boston LLC* (N.D.Cal. Oct. 24, 2003, No. C 03-3451 SC) 2003 U.S. Dist. LEXIS 19116, 2003 WL 22434098, *1, 2.) In October 2003, the action was remanded to state court on plaintiff's motion. (*Id.* 2003 WL 22434098 at p. *2.) In its order for remand, the federal district court concluded that the case did not fall within the standards for mandatory removal under SLUSA, because the complaint does not allege misrepresentations in connection with the purchase or sale of a covered security. (2003 WL 22434098 at pp. *3, 5.)

Once the action was back in state court, defendants demurred to the complaint. They also moved to strike plaintiff's prayer for nonrestitutionary disgorgement. In supporting papers, defendants argued that the court should sustain the demurrer because plaintiff failed to allege any injury. They also

---

[1] Further unspecified statutory references are to the Business and Professions Code.

argued that the unfair competition law does not apply to this case, which involves securities, and they urged the court to apply the abstention doctrine. In support of their motion to strike plaintiff's prayer for nonrestitutionary disgorgement, defendants argued that no such remedy is available under the UCL. In making that argument, defendants relied on two recent California Supreme Court decisions: *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116 [96 Cal.Rptr.2d 485, 999 P.2d 718] (*Kraus*), and *Korea Supply Co. v. Lockheed Martin Corp.* (2003) 29 Cal.4th 1134 [131 Cal.Rptr.2d 29, 63 P.3d 937] (*Korea Supply*).

Plaintiff opposed the demurrer and the motion to strike. In responding to the demurrer, plaintiff countered each of defendants' arguments. He thus asserted that he sufficiently alleged injury, that his facts put him within the scope of the unfair competition law, and that the abstention doctrine does not apply here. In opposition to defendants' motion to strike the prayer, plaintiff argued that the high court decisions in *Kraus* and *Korea Supply* do not foreclose the remedy of nonrestitutionary disgorgement in cases such as this, where class certification is sought.

The hearing on defendants' demurrer and motion to strike took place in March 2004. All parties appeared through counsel. The court first asked plaintiff "to justify the complaint based on [section] 17200, claim for damages." Plaintiff responded: "First we are not seeking damages. We are seeking an equitable remedy . . . ." When pressed by the court to explain how such relief would be computed, plaintiff stated that the remedy sought would "take into account" the stockholders' "loss in value over the period of time that Credit Suisse published what we contend were unjustified reports. And then allocate the monies we have recovered, the disgorgement of profits that we're seeking on a pro rata basis based on the number of shares traded and the dollar amounts involved." The court stated: "17200 does not authorize that type of recovery. The only recovery that you're permitted under 17200 is a restitutionary recovery based upon what has been received from the plaintiffs by the defendant improperly under the terms of the statute." Plaintiff disagreed, arguing that "nonrestitutionary disgorgement is [an] available remedy under section 17200 in the event the plaintiff is able to satisfy the court that the requirements of Code of Civil Procedure [section] 382 for [class] certification are met." The court was not persuaded by plaintiff's argument. It therefore sustained the demurrer to the complaint with leave to amend.

In April 2004, plaintiff gave notice that he did not intend to amend the complaint.

In May 2004, the court entered judgment of dismissal.

This appeal ensued. In addition to their opening, response, and reply briefs, the parties submitted supplemental letter briefing prior to oral argument, which we have considered.

## CONTENTIONS

On appeal, plaintiff renews the arguments that he made in the trial court. First, he argues, California law allows for nonrestitutionary disgorgement in unfair competition class action suits such as the one at issue here. Next, plaintiff contends, he is entitled to relief on the facts alleged in his complaint, since he is suing on behalf of holders of securities, not buyers or sellers. Third, plaintiff asserts, the abstention doctrine does not apply to this case.

Defendants dispute each of plaintiff's arguments. First, they contend, the remedy that plaintiff seeks is unavailable under unfair competition law, even in class actions. Next, defendants argue, the unfair competition law does not apply to securities claims, such as those asserted by plaintiff. Finally, defendants urge, this case calls for application of the abstention doctrine.

## DISCUSSION

As we explain, we conclude that the remedy of nonrestitutionary disgorgement is not available in statutory unfair competition cases, even those brought as class actions. Our conclusion is compelled by the rationale of *Korea Supply* and it is consistent with voter-enacted amendments to the UCL statute. In light of that conclusion, we need not decide plaintiff's other claims, a point we also explain more fully, below.

To establish the proper framework for our analysis, we first set forth the standards that guide our review and the precepts that govern our task of statutory construction. We next describe the relevant legal principles. We then apply those principles to the case before us.

### I. Appellate Review

A. *Scope and Standard of Review*

This appeal challenges the judgment of dismissal that followed the order sustaining defendants' demurrer. "A demurrer tests the pleading alone, and not the evidence or the facts alleged." (*City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1998) 68 Cal.App.4th 445, 459 [80 Cal.Rptr.2d 329].) For that reason, "we take as true the well-pleaded factual allegations of the complaint." (*Construction Protective Services, Inc. v. TIG Specialty Ins.*

*Co.* (2002) 29 Cal.4th 189, 193 [126 Cal.Rptr.2d 908, 57 P.3d 372]; see also, e.g., *Korea Supply, supra,* 29 Cal.4th at p. 1141.)

"When a demurrer is sustained, we determine whether the complaint states facts sufficient to constitute a cause of action." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) To the extent that the interpretation or application of a statute is at issue, "we exercise our independent judgment about whether the complaint states a cause of action as a matter of law." (*Montclair Parkowners Assn. v. City of Montclair* (1999) 76 Cal.App.4th 784, 790 [90 Cal.Rptr.2d 598].)

## B. *Principles of Statutory Construction*

This case requires us to consider and apply the unfair competition law, statutes authorizing class actions, and the interplay between those provisions. For that reason, we begin by summarizing some familiar rules of statutory construction.

■ "Pursuant to established principles, our first task in construing a statute is to ascertain the intent of the Legislature so as to effectuate the purpose of the law." (*Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1386 [241 Cal.Rptr. 67, 743 P.2d 1323].) In determining legislative intent, we first look to the statutory language itself. (*Ibid.*) "If the language of a statute is clear and unambiguous, judicial construction is not necessary and a court should not indulge in it." (*Kraus, supra,* 23 Cal.4th at p. 129.)

Where judicial construction is necessary, the "words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible." (*Dyna-Med, Inc. v. Fair Employment & Housing Com., supra,* 43 Cal.3d at p. 1387.) In cases involving two codes, "they 'must be read together and so construed as to give effect, when possible, to all the provisions thereof.' " (*Tripp v. Swoap* (1976) 17 Cal.3d 671, 679 [131 Cal.Rptr. 789, 552 P.2d 749], overruled on another ground in *Frink v. Prod* (1982) 31 Cal.3d 166, 180 [181 Cal.Rptr. 893, 643 P.2d 476].)

## II. General Legal Principles

## A. *Unfair Competition Law*

■ As the California Supreme Court explained in *Korea Supply*, the UCL "prohibits unfair competition, including unlawful, unfair, and

fraudulent business acts." (*Korea Supply, supra,* 29 Cal.4th at p. 1143; see § 17200.) "A UCL action is an equitable action by means of which a plaintiff may recover money or property obtained from the plaintiff or persons represented by the plaintiff through unfair or unlawful business practices." (*Cortez v. Purolator Air Filtration Products Co.* (2000) 23 Cal.4th 163, 173 [96 Cal.Rptr.2d 518, 999 P.2d 706].) The UCL protects consumers as well as business competitors. (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 109 [101 Cal.Rptr. 745, 496 P.2d 817]; *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 180 [83 Cal.Rptr.2d 548, 973 P.2d 527].)

1. *Overview*

■ "The UCL covers a wide range of conduct." (*Korea Supply, supra,* 29 Cal.4th at p. 1143.) "Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices. [Citation.] In addition, under section 17200, 'a practice may be deemed unfair even if not specifically proscribed by some other law.' " (*Ibid.*)

Nevertheless, some conduct is beyond the reach of the UCL. For example, as one court recently concluded, "section 17200 does not apply to securities transactions." (*Bowen v. Ziasun Technologies, Inc.* (2004) 116 Cal.App.4th 777, 788 [11 Cal.Rptr.3d 522]; see generally Stern, Bus. & Prof. Code § 17200 Practice (The Rutter Group 2005) ¶¶ 3:24–3:32, pp. 3-5 to 3-7 (Stern).)

■ Furthermore, under the abstention doctrine, courts may decline to decide UCL claims where a regulatory or administrative mechanism addresses the conduct at issue. (See, e.g., *Desert Healthcare Dist. v. PacifiCare FHP, Inc.* (2001) 94 Cal.App.4th 781, 793–796 [114 Cal.Rptr.2d 623]; see generally Stern, *supra,* ¶ 5:82–5:95, pp. 5-29 to 5-33.) "The notion of abstention in the context of the UCL originally arose in cases involving the intersection of federal and state law." (*Desert Healthcare Dist.,* at p. 794.) But the notion applies more broadly. (*Id.* at pp. 794–795.) As has been said, "because the remedies available under the UCL, namely injunctions and restitution, are equitable in nature, courts have the discretion to abstain from employing them. Where a UCL action would drag a court of equity into an area of complex economic policy, equitable abstention is appropriate." (*Id.* at p. 795.)

■ "While the scope of conduct covered by the UCL is broad, its remedies are limited." (*Korea Supply, supra,* 29 Cal.4th at p. 1144.) Suits asserting statutory UCL claims are equitable actions. (*Cortez v. Purolator Air Filtration Products Co., supra,* 23 Cal.4th at p. 173.) For that reason, "compensatory damages are not available" in such suits. (*Ibid.*)

### 2. History

"The UCL evolved from a 1933 amendment to Civil Code section 3369." (*Kraus, supra,* 23 Cal.4th at p. 129; see Civ. Code, former § 3369, as amended by Stats. 1933, ch. 953, § 1, p. 2482.) With respect to remedies, the 1933 amendment provided express authority for courts to enjoin acts of unfair competition, but it did not explicitly empower courts to order monetary relief. (*Kraus,* at pp. 129; *Korea Supply, supra,* 29 Cal.4th at p. 1146.) Forty years later, in the *Jayhill Corp.* case, the California Supreme Court recognized the courts' inherent equitable power to order restitution under the UCL, notwithstanding the absence of explicit statutory authorization to do so. (*Korea Supply, supra,* 29 Cal.4th at p. 1147, discussing *People v. Superior Court (Jayhill Corp.)* (1973) 9 Cal.3d 283, 286 [107 Cal.Rptr. 192, 507 P.2d 1400].) "Three years after *Jayhill Corp.,* express authority to order restitution was added to Civil Code section 3369, the predecessor to section 17203. (Stats. 1976, ch. 1005, § 1, p. 2378.)" (*Korea Supply,* at p. 1147.) But "this revision of the act was intended to *codify,* not change, the remedies available to a trial court under the UCL." (*Ibid.*) "The following year, the Legislature removed the unfair competition law from Civil Code section 3369 and placed it in the Business and Professions Code (Stats. 1977, ch. 299, §§ 1, 2, pp. 1202–1203)." (*Corbett v. Superior Court* (2002) 101 Cal.App.4th 649, 664 [125 Cal.Rptr.2d 46].)

More recently, the UCL was amended by voter initiative, with the passage of Proposition 64 in November 2004. As relevant here, those amendments limit private representative actions to persons who (1) meet the standing requirements set forth in section 17204, which include injury in fact, and (2) comply with class action certification requirements set forth in Code of Civil Procedure section 382. (§ 17203, as amended by Proposition 64, § 2.)

The question of whether Proposition 64 applies retroactively is now pending before the California Supreme Court. (See, e.g., *Californians for Disability Rights v. Mervyn's** (Cal. App.), review granted April 27, 2005, S131798.) As we explain below, the answer to that question does not affect the outcome of this case.

### 3. Relevant Provisions

The relief available under the UCL is addressed in section 17203. That section currently reads: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or

employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition. Any person may pursue representative claims or relief on behalf of others only if the claimant meets the standing requirements of Section 17204 and complies with Section 382 of the Code of Civil Procedure, but these limitations do not apply to claims brought under this chapter by the Attorney General, or any district attorney, county counsel, city attorney, or city prosecutor in this state." (§ 17203, as amended by Prop. 64, § 2.)[2]

Standing is addressed in section 17204. That section currently reads: "Actions for any relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General or any district attorney or by any county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, or any city attorney of a city, or city and county, having a population in excess of 750,000, and, with the consent of the district attorney, by a city prosecutor in any city having a full-time city prosecutor or, with the consent of the district attorney, by a city attorney in any city and county in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person who has suffered injury in fact and has lost money or property as a result of such unfair competition." (§ 17204, as amended by Prop. 64, § 3.)[3]

### 4. *UCL Remedies*

■ "Section 17203 authorizes the court to fashion remedies to prevent, deter, and compensate for unfair business practices." (*Cortez v. Purolator Air Filtration Products Co., supra,* 23 Cal.4th at p. 176.) But as the California

---

[2] Prior to its amendment by voter initiative in November 2004, Section 17203 provided: "Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, as defined in this chapter, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition."

[3] Prior to its amendment by voter initiative in November 2004, Section 17204 provided: "Actions for any relief pursuant to this chapter shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General or any district attorney or by any county counsel authorized by agreement with the district attorney in actions involving violation of a county ordinance, or any city attorney of a city, or city and county, having a population in excess of 750,000, and, with the consent of the district attorney, by a city prosecutor in any city having a full-time city prosecutor or, with the consent of the district attorney, by a city attorney in any city and county in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person acting for the interests of itself, its members or the general public."

Supreme Court explained in *Korea Supply*, overall, only two remedies are available to redress violations of the UCL: injunctive relief and restitution. (*Korea Supply, supra,* 29 Cal.4th at p. 1147.) Plaintiffs may "combat unfair competition by seeking an injunction against unfair business practices. Actual direct victims of unfair competition may obtain restitution as well." (*Id.* at p. 1152.) This observation follows from the statutory language itself. The first sentence of section 17203 provides that those engaging in unfair competition "may be enjoined in any court of competent jurisdiction." The second sentence of section 17203 recognizes the court's power "to prevent" acts of unfair competition and "to restore" money or property "acquired by means of such unfair competition." Nevertheless, the statute provides, the remedies and penalties available under the UCL "are cumulative to each other and to the remedies or penalties available under all other laws of this state." (§ 17205.)

### a. *Injunction*

For more than 70 years, the UCL statute has expressly provided for injunctive relief. (*Kraus, supra,* 23 Cal.4th at p. 129; *Korea Supply, supra,* 29 Cal.4th at p. 1146.) In 1972, in the *Barquis* case, the California Supreme Court "confirmed that private plaintiffs could use the unfair competition law for injunctive relief." (*Corbett v. Superior Court, supra,* 101 Cal.App.4th at p. 664, citing *Barquis v. Merchants Collection Assn., supra,* 7 Cal.3d 94.) But "an injunction must seek to prevent harm, not to punish the wrongdoer." (*Brockey v. Moore* (2003) 107 Cal.App.4th 86, 103 [131 Cal.Rptr.2d 746].) Thus, the "injunctive remedy should not be exercised 'in the absence of any evidence that the acts are likely to be repeated in the future.' " (*Cisneros v. U.D. Registry, Inc.* (1995) 39 Cal.App.4th 548, 574 [46 Cal.Rptr.2d 233].)

### b. *Restitution*

"The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." (*Korea Supply, supra,* 29 Cal.4th at p. 1149.) Consistent with that objective, "restitutionary awards encompass quantifiable sums one person owes to another . . . ." (*Cortez v. Purolator Air Filtration Products Co., supra,* 23 Cal.4th at p. 178.) Such awards represent "money that once had been in the possession of the person to whom it [is] to be restored." (*Id.* at p. 177.)

The "notion of restoring something to a victim of unfair competition includes two separate components. The offending party must have obtained something to which it was not entitled *and* the victim must have given up something which he or she was entitled to keep." (*Day v. AT&T Corp.* (1998) 63 Cal.App.4th 325, 340 [74 Cal.Rptr.2d 55].) Restitution thus is available where "a defendant has wrongfully acquired funds or property in which a plaintiff has an ownership or vested interest." (*Alch v. Superior Court* (2004)

122 Cal.App.4th 339, 404 [19 Cal.Rptr.3d 29] (*Alch*); see *Korea Supply, supra,* 29 Cal.4th at p. 1149; *Kraus, supra,* 23 Cal.4th at pp. 126–127.) In other words, "in the UCL context . . . restitution means the return of money to those persons from whom it was taken or who had an ownership interest in it." (*Madrid v. Perot Systems Corp.* (2005) 130 Cal.App.4th 440, 455 [30 Cal.Rptr.3d 210] (*Madrid*).)

### c. *Disgorgement*

 Disgorgement generally "is a broader remedy than restitution." (*Korea Supply, supra,* 29 Cal.4th at p. 1145.) It "may include a restitutionary element, but is not so limited." (*Kraus, supra,* 23 Cal.4th at p. 127.) Put another way, there are "two types of disgorgement." (*Frieman v. San Rafael Rock Quarry, Inc.* (2004) 116 Cal.App.4th 29, 36 [10 Cal.Rptr.3d 82].) With restitutionary disgorgement, the focus is on the plaintiff's loss. It is typified by the situation where "the disgorged money or property [came] from the prospective plaintiff in the first instance." (*Korea Supply,* at p. 1152.) Restitutionary disgorgement also refers to situations where it is not possible to restore the money to the specific direct victims of the unfair practice. (*Kraus,* at p. 129.) By contrast, with nonrestitutionary disgorgement, the focus is on the defendant's gain from the unfair practice; the plaintiff need not have suffered a loss. (See *Frieman v. San Rafael Rock Quarry, supra,* at p. 36 [plaintiffs seeking nonrestitutionary disgorgement had "no individual monetary loss that may be redressed by disgorgement"].)

 As the California Supreme Court held, "disgorgement of money obtained through an unfair business practice is an available remedy in a representative action *only* to the extent that it constitutes restitution." (*Korea Supply, supra,* 29 Cal.4th at p. 1145, discussing *Kraus, supra,* 23 Cal.4th 116, italics added.) In Korea Supply, the California Supreme Court reached the same conclusion with respect to individual actions. There, the question was "whether disgorgement of profits that is *not* restitutionary in nature is an available remedy for an individual private plaintiff under the UCL." (*Korea Supply, supra,* 29 Cal.4th at p. 1144, italics added.) The high court answered that question in the negative, saying: "We hold that nonrestitutionary disgorgement of profits is not an available remedy in an individual action under the UCL." (*Id.* at p. 1152.) As the California Supreme Court explained: "This court has never approved of nonrestitutionary disgorgement of profits as a remedy under the UCL. While prior cases discussing the UCL may have characterized some of the relief available as 'disgorgement,' we were referring to the restitutionary form of disgorgement, and not to the nonrestitutionary type sought here by plaintiff." (*Id.* at p. 1148.)

## B. *Class Actions*

■ "Courts long have acknowledged the importance of class actions as a means to prevent a failure of justice in our judicial system. [Citations.] ' "By establishing a technique whereby the claims of many individuals can be resolved at the same time, the class suit both eliminates the possibility of repetitious litigation and provides small claimants with a method of obtaining redress . . . ." ' " (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 434–435 [97 Cal.Rptr.2d 179, 2 P.3d 27] (*Linder*).)

### 1. *Overview*

"Generally, a class suit is appropriate 'when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer.' [Citations.] But because group action also has the potential to create injustice, trial courts are required to ' "carefully weigh respective benefits and burdens and to allow maintenance of the class action only where substantial benefits accrue both to litigants and the courts." ' " (*Linder, supra,* 23 Cal.4th at p. 435.)

■ "Section 382 of the Code of Civil Procedure authorizes class suits in California when 'the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court.' To obtain certification, a party must establish the existence of both an ascertainable class and a well-defined community of interest among the class members. [Citations.] . . . Other relevant considerations include the probability that each class member will come forward ultimately to prove his or her separate claim to a portion of the total recovery and whether the class approach would actually serve to deter and redress alleged wrongdoing." (*Linder, supra,* 23 Cal.4th at p. 435.)

■ "Class actions are provided only as a means to enforce substantive law." (*City of San Jose v. Superior Court* (1974) 12 Cal.3d 447, 462 [115 Cal.Rptr. 797, 525 P.2d 701]; accord, *Washington Mutual Bank v. Superior Court* (2001) 24 Cal.4th 906, 918 [103 Cal.Rptr.2d 320, 15 P.3d 1071].) Class certification does not serve to enlarge substantive rights or remedies. "Altering the substantive law to accommodate procedure would be to confuse the means with the ends—to sacrifice the goal for the going." (*City of San Jose v. Superior Court, supra,* 12 Cal.3d at p. 462, fn. omitted.)

### 2. *Interplay with the Unfair Competition Law*

■ There is no inherent incompatibility between the unfair competition law and class actions. "Both consumer class actions and representative UCL

actions serve important roles in the enforcement of consumers' rights." (*Kraus, supra,* 23 Cal.4th at p. 126, fn. omitted.) As stated in an appellate decision published prior to Proposition 64, "a trial court may certify a UCL claim as a class action when the statutory requirements of section 382 of the Code of Civil Procedure are met." (*Corbett v. Superior Court, supra,* 101 Cal.App.4th at p. 663.) That authority is now explicit in the amended statute, which authorizes the pursuit of "representative claims or relief on behalf of others" provided that the claimant "complies with Section 382 of the Code of Civil Procedure . . . ." (§ 17203, as amended by Prop. 64, § 2.)

### 3. Class Action Remedies

■ One recognized method for disbursing disgorged funds in class action litigation is fluid recovery. "The term 'fluid recovery' refers to the application of the equitable doctrine of *cy pres* in the context of a modern class action." (*Granberry v. Islay Investments* (1995) 9 Cal.4th 738, 750, fn. 7 [38 Cal.Rptr.2d 650, 889 P.2d 970], citing *State of California v. Levi Strauss & Co.* (1986) 41 Cal.3d 460, 472 [224 Cal.Rptr. 605, 715 P.2d 564]; see generally Karas, *The Role of Fluid Recovery in Consumer Protection Litigation: Kraus v. Trinity Management Services* (2002) 90 Cal. L.Rev. 959, 970–974.) "Fluid recovery developed as a means by which to distribute the residue of a favorable class action judgment remaining after payment to those class members who have sufficient interest in obtaining recovery and can produce the documentation necessary to file individual claims." (*Kraus, supra,* 23 Cal.4th at pp. 127–128.) Fluid recovery is now expressly authorized by statute. (Code Civ. Proc., § 384.)

"The propriety of fluid recovery in a particular case depends upon its usefulness in fulfilling the purposes of the underlying cause of action." (*State of California v. Levi Strauss & Co., supra,* 41 Cal.3d at p. 472 ["fluid recovery methods may be employed in appropriate Cartwright Act cases"].) "It may well be that in a proper case a court may order disgorgement of profits into a fluid recovery fund in a UCL class action; at least one case has so held." (*Alch, supra,* 122 Cal.App.4th at pp. 407–408, citing *Corbett v. Superior Court, supra,* 101 Cal.App.4th at p. 655.) "Fluid recovery in class actions, however, is merely a method of paying out damages after they have been awarded." (*Alch,* at p. 408.) The fluid recovery mechanism does not enlarge the remedies available under the applicable substantive law. (*Ibid.*)

### III. Analysis

#### A. Nonrestitutionary Disgorgement

As explained above, the California Supreme Court has recognized limits on disgorgement in UCL actions. In *Kraus*, a representative UCL action, the high

court observed that restitution is the sole available monetary remedy. (*Kraus, supra,* 23 Cal.4th at pp. 129, 137.) In *Korea Supply,* an individual action, the court reached the same conclusion. (*Korea Supply, supra,* 29 Cal.4th at p. 1152.)

 As was true in *Korea Supply,* the "remedy sought by plaintiff in this case is not restitutionary because plaintiff does not have an ownership interest in the money it seeks to recover from defendants." (*Korea Supply, supra,* 29 Cal.4th at p. 1149.) Nor does he have a "vested interest" in the monetary relief he seeks. (*Ibid.*)

As we now explain, the nonrestitutionary remedy that plaintiff seeks is not available under the UCL, regardless of whether the claim is prosecuted as a class action. In reaching that conclusion, we are in accord with the Third District's recent decision in *Madrid, supra,* 130 Cal.App.4th at pp. 459–462.

### 1. *Nonrestitutionary disgorgement is impermissible under the UCL.*

 There is neither explicit nor implicit legislative authorization for allowing nonrestitutionary disgorgement. As our high court stated in *Kraus,* "restitution is the only monetary remedy *expressly* authorized by section 17203." (*Kraus, supra,* 23 Cal.4th at p. 129, italics added.) Moreover, it is the only monetary remedy *implicitly* authorized by the statute. There is nothing "in the legislative history that suggests that the Legislature intended to provide" relief in the form of nonrestitutionary disgorgement. (*Korea Supply, supra,* 29 Cal.4th at p. 1147.) Given that there is "nothing in the express language of the statute or its legislative history indicating that the Legislature intended to provide such a remedy, the remedy [is] not available." (*Ibid.,* citing *Kraus, supra,* 23 Cal.4th at p. 132.) Thus, no statutory authority allows a judge "to order a defendant to disgorge all profits to a plaintiff who does not have an ownership interest in those profits." (*Korea Supply,* at p. 1177.)

 Nor do courts have inherent equitable power to order nonrestitutionary disgorgement. "A court cannot, under the equitable powers of section 17203, award whatever form of monetary relief it believes might deter unfair practices." (*Korea Supply, supra,* 29 Cal.4th at p. 1148.) As the statutory language makes clear, "the equitable powers of a court are to be used to 'prevent' practices that constitute unfair competition and to 'restore to any person in interest' any money or property acquired through unfair practices. (§ 17203.)" (*Id.* at pp. 1147–1148.) The "prevent" prong of the statute reflects the legislative goal of deterrence, but that objective need not be accomplished through monetary relief. (*Id.* at p. 1148.) "The fact that the 'restore' prong of section 17203 is the only reference to monetary penalties in this section indicates that the Legislature intended to limit the available monetary remedies under the act." (*Ibid.,* fn. omitted.)

The California Supreme Court has explained the policy reasons that underlie this limitation of monetary remedies. "The nonrestitutionary disgorgement remedy sought by plaintiff closely resembles a claim for damages, something that is not permitted under the UCL." (*Korea Supply, supra,* 29 Cal.4th at pp. 1150–1151.) "Allowing the plaintiff in this case to recover nonrestitutionary disgorgement under the UCL would enable it to obtain tort damages while bypassing the burden of proving the elements" of its tort claim. (*Id.* at p. 1151.) "The result could be that the UCL would be used as an all-purpose substitute for a tort or contract action, something the Legislature never intended." (*Ibid.*) "In addition, it is possible that due process concerns would arise if an individual business competitor could recover disgorgement of profits under the UCL. While restitution is limited to restoring money or property to direct victims of an unfair practice, a potentially unlimited number of individual plaintiffs could recover nonrestitutionary disgorgement. Allowing such a remedy would expose defendants to multiple suits and the risk of duplicative liability without the traditional limitations on standing." (*Ibid.*) Overall, limiting monetary relief to restitution honors "the balance struck in this state's unfair competition law between broad liability and limited relief." (*Id.* at p. 1152.)

■■■ For all these reasons, monetary relief in a UCL action is limited to restitution. Permitting a nonrestitutionary remedy "would be at odds with the language and history of the statute, . . . previous decisions construing the UCL, and public policy." (*Korea Supply, supra,* 29 Cal.4th at p. 1152.)

2. *The nature of the litigation as a class action does not change the result.*

Notwithstanding *Kraus* and *Korea Supply*, plaintiff contends, nonrestitutionary disgorgement is available in class actions. He argues: "The holding of *Korea Supply* is limited to individual actions and does not address class cases such as the case at bar." As plaintiff correctly observes, the court there did expressly limit its discussion "to individual private actions brought under the UCL." (*Korea Supply, supra,* 29 Cal.4th at p. 1148, fn. 6.) The court thus distinguished "public actions," where "civil penalties may be collected from a defendant. (§ 17206.)" (*Ibid.*) The high court also remarked: "Further, in *Kraus* we noted that the Legislature 'has authorized disgorgement into a fluid recovery fund in class actions.' (*Kraus, supra,* 23 Cal.4th at p. 137.) These issues are not before us, and therefore we need not address them further." (*Ibid.*) In light of that limitation, one court has observed: "The issue of the availability of nonrestitutionary disgorgement in a properly certified UCL class action was not resolved" in *Korea Supply*. (*Frieman v. San Rafael Rock Quarry, Inc., supra,* 116 Cal.App.4th at p. 37.)

Although *Korea Supply* arose in the context of an individual action, its rationale applies beyond that context. In our view, it controls here. (See *Madrid, supra,* 130 Cal.App.4th at p. 460; *Alch, supra,* 122 Cal.App.4th at p. 408.)

■ A class action aggregates individual claims, which makes it appropriate "when numerous parties suffer injury of insufficient size to warrant individual action and when denial of class relief would result in unjust advantage to the wrongdoer." (*Blue Chip Stamps v. Superior Court* (1976) 18 Cal.3d 381, 385–386 [134 Cal.Rptr. 393, 556 P.2d 755].) But class action status does not alter the parties' underlying substantive rights. (*City of San Jose v. Superior Court, supra,* 12 Cal.3d at p. 462; *Madrid, supra,* 130 Cal.App.4th at p. 461.) If a specific form of relief is foreclosed to claimants as individuals, it remains unavailable to them even if they congregate into a class.

■ "Although fluid class recovery is not improper in class actions in general, the specific law under which the action is brought might preclude the use of such a damage distribution device." (*Bruno v. Superior Court* (1981) 127 Cal.App.3d 120, 130 [179 Cal.Rptr. 342].) Thus, for example, "the Cartwright Act permits fluid class recovery." (*Ibid.*; see also, e.g., *State of California v. Levi Strauss & Co., supra,* 41 Cal.3d at p. 472.) The question here is whether the UCL permits nonrestitutionary fluid class recovery. The answer is "no."

Our conclusion that nonrestitutionary relief is unavailable in class actions brought under the UCL finds support in two recent appellate decisions, *Madrid* and *Alch.*

In *Madrid,* the plaintiff attempted to pursue a class action under the UCL on behalf of California electricity customers. (*Madrid, supra,* 130 Cal.App.4th at p. 445.) He did not seek to recover utility overcharges. (*Id.* at p. 455.) Instead, he sought an order requiring the defendants to return profits earned from their unfair business practices. (*Id.* at p. 454.) The court rejected plaintiff's claim to that remedy, saying that his "assertion that defendants received ill-gotten gain does not make a viable UCL claim unless the gain was money in which plaintiff had a vested interest." (*Id.* at p. 455.) Plaintiff also claimed that "because he filed the lawsuit as a class action (certification of which was denied by the trial court), he is entitled to pursue *nonrestitutionary* disgorgement of wrongfully obtained profits, because 'fluid recovery' of disgorgement is a remedy available in class actions." (*Id.* at p. 459, fn. omitted.) That claim fared no better. After analyzing the relevant authorities, the court concluded that "*nonrestitutionary* disgorgement is not an available remedy in a UCL class action." (*Id.* at p. 460.)

In *Alch*, a group of writers sued as a class under the Fair Employment and Housing Act, asserting age discrimination. (*Alch, supra,* 122 Cal.App.4th at p. 350.) They did "not seek disgorgement of unlawfully obtained profits into a fluid recovery fund; they [sought] an award of classwide backpay into a fluid recovery fund." (*Id.* at p. 407, fn. omitted.) The court framed the issue as follows: "The question is not whether the trial court could order fluid class recovery of a damages award; it is whether the trial court has the authority to award nonrestitutionary backpay under the UCL in the first instance. It does not." (*Id.* at p. 408.)

In supplemental letter briefing, plaintiff cites three recent cases, which, he says, "recognize the availability of nonrestitutionary disgorgement in class actions." Those cases are *State v. Altus Finance* (2005) 36 Cal.4th 1284, 1304, fn. 7 [32 Cal.Rptr.3d 498]; *Johnson v. Ford Motor Co.* (2005) 35 Cal.4th 1191, 1209, fn. 10 [29 Cal.Rptr.3d 401]; and *Fireside Bank v. Superior Court* (2005) 133 Cal.App.4th 742 [35 Cal.Rptr.3d 80]. None involves the interplay between the UCL and class action litigation, and none persuades us to a different conclusion.

In this case, plaintiff seeks nonrestitutionary class-wide monetary relief. That remedy is foreclosed by the rationale of *Korea Supply*.

As in *Korea Supply*, the analysis logically begins "with the statutory authorization for relief under the UCL, found in section 17203." (*Korea Supply, supra,* 29 Cal.4th at p. 1146.) An examination of section 17203 discloses no basis for granting nonrestitutionary monetary relief here. (*Korea Supply*, at p. 1147; see *Alch, supra,* 122 Cal.App.4th at pp. 406, 408.)

The "prevent" prong of the statute does not authorize such relief. (*Korea Supply, supra,* 29 Cal.4th at p. 1148; *Alch, supra,* 122 Cal.App.4th at p. 404; cf., *Frieman v. San Rafael Rock Quarry, Inc., supra,* 116 Cal.App.4th at p. 35 [not reaching plaintiffs' claim that nonrestitutionary disgorgement is available under this prong].) As the court said in *Kraus*: "Section 17203 also grants the court the power to make orders necessary to prevent the use of unfair business practices. Such orders may encompass broader *restitutionary* relief, including disgorgement of all money so obtained even when it may not be possible to restore all of that money to direct victims of the practice." (*Kraus, supra,* 23 Cal.4th at p. 129, italics added.)

Conversely, the "restore" prong of the statute demonstrates "that the Legislature intended to limit the available monetary remedies under the act" to restitution. (*Korea Supply, supra,* 29 Cal.4th at p. 1148, fn. omitted.) Thus, there is no explicit statutory authorization to grant nonrestitutionary disgorgement in a case such as this. Nor does the legislative history suggest an implicit grant of such authority. (*Id.* at p. 1147.)

Beyond the statutory analysis, other considerations support the application of *Korea Supply*'s rationale here. For one thing, as that case makes clear, courts lack inherent equitable power to order nonrestitutionary disgorgement. "A court cannot, under the equitable powers of section 17203, award whatever form of monetary relief it believes might deter unfair practices." (*Korea Supply, supra,* 29 Cal.4th at p. 1148.) Furthermore, some of the policy considerations cited in *Korea Supply* apply in this case. Thus, for example, there is the same risk here that "nonrestitutionary disgorgement under the UCL would enable [plaintiff] to obtain tort damages while bypassing the burden of proving" his claim. (*Id.* at p. 1151.) The court in *Korea Supply* also cited "due process concerns" in reaching its decision, including the lack of "any limit on the number of times the remedy could be sought or any limit on the monetary relief available." (*Id.* at p. 1152.) With class certification, that particular concern is attenuated, though not entirely eliminated. (Cf. *Dean Witter Reynolds, Inc. v. Superior Court* (1989) 211 Cal.App.3d 758, 773 [259 Cal.Rptr. 789] [discussing the threat to defendant from persons not bound by the class action judgment].) Overall, we conclude the factors cited in *Korea Supply* support its application in the context of this class action.

As plaintiff points out, there is another statute in play here, which specifically permits fluid recovery in class actions—section 384 of the Code of Civil Procedure. As we have already explained, however, that procedural provision does not override the substantive remedial provisions of the unfair competition law. (*Bruno v. Superior Court, supra,* 127 Cal.App.3d at p. 130.) The tail does not wag the dog. (*City of San Jose v. Superior Court, supra,* 12 Cal.3d at p. 462.)

### 3. *Conclusion*

In *Korea Supply*, the California Supreme Court reaffirmed that a nonrestitutionary remedy "would be at odds" with the unfair competition law's language and history, with the high court's own prior decisions, and with public policy. (*Korea Supply, supra,* 29 Cal.4th at p. 1152.) Although *Korea Supply* involved an individual private plaintiff, its rationale has broader application. *Korea Supply* definitively construes the unfair competition law, particularly its remedies as set forth in section 17203. Because the UCL is the specific substantive law from which plaintiff's claims arise, it controls the remedies that may be obtained in the class action context. (*Bruno v. Superior Court, supra,* 127 Cal.App.3d at p. 130.) Under the logic and compulsion of *Korea Supply*, we conclude that nonrestitutionary disgorgement is not available to a private plaintiff, regardless of the nature of the UCL proceeding as a class action.

## B. Stock Holdings

As explained above, the unfair competition law "covers a wide range of conduct." (*Korea Supply, supra,* 29 Cal.4th at p. 1143.) But its reach is not unlimited. The question of whether the unfair competition law applies to securities transactions has not been addressed by our state's high court, but there is appellate case law holding that the UCL does not apply to such claims. (*Bowen v. Ziasun Technologies, Inc., supra,* 116 Cal.App.4th at p. 788.) In addition, the abstention doctrine may apply to UCL claims. (Cf., *Desert Healthcare Dist. v. PacifiCare FHP, Inc., supra,* 94 Cal.App.4th at pp. 794–795.)

In this case, plaintiff contends that his claims are within the reach of the UCL because they arise from the *holding* of corporate stock, not from its purchase or sale. A similar claim by plaintiff was rejected in a federal district court decision. (*Feitelberg v. Merrill Lynch & Co.* (N.D.Cal. 2002) 234 F.Supp.2d 1043, 1052; aff'd 353 F.3d 765.)

We need not resolve the issue here, given our conclusion regarding available remedies under the UCL. In this case, plaintiff seeks only nonrestitutionary monetary relief. As we have just explained, he is not entitled to that remedy. For that reason, plaintiff's UCL claim necessarily falls and we need not decide whether the UCL applies to the challenged conduct.

## C. Injunctive Relief

In addition to nonrestitutionary disgorgement, which is not available, plaintiff's complaint also sought an injunction. That remedy is expressly authorized by section 17203. It is used in appropriate cases to prevent future harm. (*Blue Chip Stamps v. Superior Court, supra,* 18 Cal.3d at p. 386; *Brockey v. Moore, supra,* 107 Cal.App.4th at p. 103.)

Even where a remedy is permitted, however, it is not required: "Section 17203 does not mandate restitution or injunctive relief when an unfair business practice has been shown." (*Cortez v. Purolator Air Filtration Products Co., supra,* 23 Cal.4th at p. 180.) Various equitable grounds may support a court's decision not to act on a UCL claim. (*Ibid.*) Thus, for example, "judicial intervention" in a UCL case may be withheld under the equitable doctrine of abstention. (*Desert Healthcare Dist. v. PacifiCare FHP, Inc., supra,* 94 Cal.App.4th at p. 794.)

Given the posture of this case, we need not decide whether it would be proper to abstain from granting injunctive relief in these circumstances. That is because plaintiff's claim is flawed, both procedurally and substantively.

First, as a procedural matter, plaintiff's arguments concerning injunctive relief come too late, having been made for the first time in his reply brief. (See, e.g., *Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal.App.4th 847, 894, fn. 10 [93 Cal.Rptr.2d 364].) "Points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before." (*Campos v. Anderson* (1997) 57 Cal.App.4th 784, 794, fn. 3 [67 Cal.Rptr.2d 350].) "The California Supreme Court long ago expressed its hostility to the practice of raising new issues in an appellate reply brief." (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764 [60 Cal.Rptr.2d 770].) " 'Obvious reasons of fairness militate against consideration of an issue raised initially in the reply brief of an appellant.' " (*Ibid.*) In this case, plaintiff has offered no reason for failing to assert his arguments concerning injunctive relief earlier. "We will not spend any judicial resources resolving this untimely claim." (*Heiner v. Kmart Corp.* (2000) 84 Cal.App.4th 335, 351 [100 Cal.Rptr.2d 854].)

In any event, even if we were to consider plaintiff's argument on its merits, this record discloses no basis for reversal on the question of entitlement to injunctive relief. (Cf., *Elite Show Services, Inc. v. Staffpro, Inc.* (2004) 119 Cal.App.4th 263, 270 [14 Cal.Rptr.3d 184].) The business practice challenged here is the subject of a federal consent judgment that compels defendants to stop the offending conduct. As the California Supreme Court said long ago, "when as here, the assertedly wrongful practice has ended long before the action is filed, its requested termination is a rather empty prayer." (*Blue Chip Stamps v. Superior Court, supra,* 18 Cal.3d at p. 386.)

To sum up, procedurally, plaintiff's claim for injunctive relief is foreclosed; substantively, it lacks merit.

## SUMMARY OF CONCLUSIONS

1. Nonrestitutionary disgorgement is not available as a remedy to redress violations of the unfair competition law, regardless of whether the UCL claim is prosecuted as a class action.

2. We do not reach the question of whether the unfair competition law applies to plaintiff's securities claims, because the sole monetary remedy he seeks—nonrestitutionary disgorgement—is not authorized by the UCL.

3. Plaintiff's claim for injunctive relief under the unfair competition law is forfeited because he failed to preserve it, and the claim lacks substantive merit in any event.

## DISPOSITION

The judgment is affirmed.

Bamattre-Manoukian, Acting P. J., and Mihara, J., concurred.

A petition for a rehearing was denied January 5, 2006, and appellant's petition for review by the Supreme Court was denied February 22, 2006, S140478. Werdegar, J., did not participate therein.